986 P.2d 914

The STATE of Arizona, Appellee,

v.

Greg David TAMPLIN, Appellant.

No. 2 CA–CR 98–0560.

Court of Appeals of Arizona, Division 2, Department A.

Aug. 27, 1999.

Janet Napolitano, Arizona Attorney General By Paul J. McMurdie and Jack Roberts, Phoenix, Attorneys for Appellee.

Susan A. Kettlewell, Pima County Public Defender By John F. Palumbo, Tucson, Attorneys for Appellant.

### OPINION

PELANDER, Presiding Judge.

¶ 1 Appellant was convicted after a jury trial of two counts of armed robbery, two counts of kidnapping, two counts of aggravated assault with a deadly weapon, and one count of theft by control. He was sentenced to mitigated, concurrent prison terms of seven years for the armed robbery and kidnapping convictions, five years for the aggravated assaults, and .75 years for the theft conviction. The sole issue raised on appeal is whether the trial court committed fundamental error in instructing the jurors concerning appellant's knowledge of whether his conduct was wrong. We affirm.

¶ 2 We view the facts and all reasonable inferences therefrom in the light most favorable to upholding the verdicts. *State v. Atwood*, 171 Ariz. 576, 832 P.2d 593 (1992). On November 29, 1997, appellant and his cousin robbed a Tucson restaurant, where the cousin worked, as it was closing for the day. After pointing a gun at two of

the employees, appellant had one of them place the restaurant's money into bags. He fled with the money but was apprehended almost immediately. Appellant was interrogated at the police station. He admitted to the officers that discarded items, including a .22 caliber handgun, a blue knit cap with holes cut for eyes, a blue sweater, and a glove, all used in the commission of the offenses, were his. He initially denied committing the robbery but, during the interview, admitted that he and his cousin had planned the robbery weeks in advance, explained how he had planned to perpetrate the offenses, admitted pointing the gun at the two employees, and admitted taking the money. After the interview, appellant also showed the officers where he had left the bags containing the cash that was taken in the robbery.

¶ 3 Appellant's defense was insanity. A police detective testified that, during the interrogation, appellant had stated that although he knew his conduct was illegal, he had been hearing voices. A psychiatrist testified that appellant exhibited numerous mental disorders at the time of the offenses and that his commission of the crimes was in response to auditory hallucinations that commanded him to act. On cross-examination, the psychiatrist testified that appellant was not necessarily precluded by his mental disorders from discerning the wrongfulness of his conduct. The state's psychiatrist testified that appellant understood at the time of the offenses "that what he was doing was wrong."

¶ 4 The trial court instructed the jurors:

Knowledge that an act was wrong, as the phrase is used in these instructions, means knowledge that the act was wrong according to generally accepted moral standards of the community and not the defendant's own individual moral standards. Knowledge that an act was forbidden by law will permit the inference of knowledge that the act was wrong according to generally accepted moral standards of the community. That is, one cannot be declared legally insane if he knew that the act was morally and legally wrong but he personally believed that the act was right.

. . . .

A person may be found guilty except insane if at the time of the commission of the criminal act the person was afflicted with a mental disease or defect of such severity that the person did not know the conduct was wrong.

The first part of the instruction tracks the language of the instruction approved in *State v. Corley*, 108 Ariz. 240, 495 P.2d 470 (1972), and the final sentence quotes A.R.S. § 13–502(A) almost verbatim. Appellant did not object to the instruction, but now questions whether *Corley* remains good law, arguing that *Corley* is inconsistent with § 13–502(A), which did not exist when *Corley* was decided.

¶ 5 Appellant specifically contends that giving the instruction amounted to fundamental error because it precluded the jury from finding, based on the evidence presented, that he was legally insane under § 13–502(A). That statute states, in pertinent part, that "[a] person may be found guilty except insane if at the time of the commission of the criminal act the person was afflicted with a mental disease or defect of such severity that the person did not know the criminal act was wrong." Appellant maintains that although he knew his conduct was "wrong" as a matter of criminal law, he believed he was committing the offenses under coercion from hallucinatory voices and therefore believed that he was acting "rightly" by his own subjective standards. Accordingly, he contends the instruction was defective because it precluded the jury from considering that subjective element.

¶ 6 We determine de novo whether jury instructions properly state the law. *State v. Orendain*, 188 Ariz. 54, 932 P.2d 1325 (1997). Similarly, statutory interpretation involves a question of law subject to our de novo review. *State v. Jensen*, 193 Ariz. 105, 970 P.2d 937 (App.1998).

¶ 7 In *Corley*, our supreme court addressed the question of "whether a person's knowledge that his act is 'wrong,' as such term is used . . . for criminal insanity, should be defined as 'wrong' by defendant's personal beliefs or 'wrong' as defined by a community standard of morality." *Id.* at 242, 495 P.2d at 472 (citation omitted). The court held:

We find no authority upholding the defendant's position that one suffering from a mental disease could be declared legally insane if he knew that the act was morally and legally wrong but he personally believed that act right. We believe that this would not be a sound rule, because it approaches the position of exonerating a defendant for his personal beliefs and does not take account of society's determination of defendant's capacity to conform his conduct to the law.

*Id.* at 243, 495 P.2d at 473. We find no inconsistency between that holding and § 13–502(A).

¶ 8 We first note that appellant offers no authority to support his contention that he could be found insane under § 13–502 if he "believed that he was acting 'rightly,' at least by his own individual and personal moral standards." *See* Ariz. R.Crim. P. 31.13(c), 17 A.R.S. In any event, § 13–502(A) neither contradicts nor is it inconsistent with the definition of "wrong" set forth in *Corley.*

¶ 9 Section 13–502(A) does not modify the aspect of the insanity defense at issue in *Corley.* The court in *Corley* analyzed the meaning of the word "wrong" in the context of the *M'Naghten*[1] test for criminal insanity. Under that test, codified in 1977 in former A.R.S. § 13–502,[2] a defendant could be found legally insane if, at the time of the criminal act, he had "(1) [s]uch a defect of reason as not to know the nature and quality of the act, or (2)[i]f he did know [the nature and quality of the act], that he did not know he was doing what was wrong." *Corley,* 108 Ariz. at 242 n. 1, 495 P.2d at 472 n. 1; *State v. Mott,* 187 Ariz. 536, 931 P.2d 1046 (1997), *cert. denied,* 520 U.S. 1234, 117 S.Ct. 1832, 137 L.Ed.2d 1038 (1997). *See also* former § 13–502(A), 1977 Ariz. Sess. Laws, ch. 142, § 45 ("A person is not responsible for criminal conduct if at the time of such conduct the person was suffering from such a mental disease or defect as not to know the nature and quality of the act or, if such person did

know, that such person did not know that what he was doing was wrong.").

¶ 10 In 1993, our legislature replaced former § 13–502 with the current version of the statute[3] upon which appellant relies. The new statute essentially abandoned the first prong of the *M'Naghten* test, limiting the availability of the insanity defense to a person who, at the time of the criminal act, was "afflicted with a mental disease or defect of such severity that the person did not know the criminal act was wrong." § 13–502(A). Because *Corley* merely defined "a person's knowledge that his act is 'wrong' " under the second prong of the *M'Naghten* test, 108 Ariz. at 242, 495 P.2d at 472, *Corley's* definition of "wrong" is still viable under current § 13–502(A).

¶ 11 Moreover, the plain wording of § 13–502(A) does not suggest a different interpretation of the term "wrong" than that articulated in *Corley,* which is consistent with other courts' constructions of that term. See, e.g., *People v. Serravo,* 823 P.2d 128, 137–38 (Colo.1992) (terms "right" and "wrong" in insanity statute "are essentially ethical in character and have their primary source in the existing societal standards of morality," thus defense should be objectively measured by those standards "rather than by a defendant's personal and subjective understanding of the legality or illegality of the act in question"). *See also State v. Wilson,* 242 Conn. 605, 700 A.2d 633 (1997) (rejecting personal test as improper method of measuring defendant's capacity to appreciate wrongfulness of actions under statute); *State v. Worlock,* 117 N.J. 596, 569 A.2d 1314 (1990) (concept of moral wrong must be judged by societal standards, not personal standard of individual defendant). In addition, the court's construction of "wrong" in *Corley* "promote[s] justice and effect[s] the objects of the law," as A.R.S. § 13–104 requires.

¶ 12 As the state also points out, our supreme court has upheld *Corley's* determination that the term "wrong" for purposes of

---

1. *M'Naghten's Case,* 10 Clark & Fin. 200, 8 Eng. Reprint 718 (1843).

2. Repealed by 1993 Ariz. Sess. Laws, ch. 256, § 2, effective January 2, 1994.

3. Added by 1993 Ariz. Sess. Laws, ch. 256, § 3, effective from and after January 1, 1994.

the insanity defense should be defined by a community standard of morality and not the defendant's personal beliefs, even after the legislature first enacted § 13–502 in 1977. *See State v. Berndt*, 138 Ariz. 41, 672 P.2d 1311 (1983); *State v. Skaggs*, 120 Ariz. 467, 586 P.2d 1279 (1978); *State v. Sanchez*, 117 Ariz. 369, 573 P.2d 60 (1977). Therefore, because *Corley's* definition of "wrong" applies to and is consistent with § 13–502(A) and because the current statutory language does not vitiate *Corley,* the trial court's instruction was correct.

■ ¶ 13 Even assuming, however, that the trial court erred in giving that portion of the instruction relating to knowledge that appellant now challenges, it did not rise to the level of fundamental error because it did not prejudice his defense. *See State v. Gendron,* 168 Ariz. 153, 812 P.2d 626 (1991). The testimony presented did not amount to clear and convincing evidence that appellant was legally insane when he committed the offenses, as required by § 13–502(A) and (C). *See State v. Zmich,* 160 Ariz. 108, 770 P.2d 776 (1989). Appellant admitted to weeks of planning the robbery and went into great detail in his statements to both the investigating police officer and to the state's psychiatrist regarding his preparations to obtain "easy money" from the restaurant. He said nothing to the investigating police officer to indicate that he had acted out of obedience to "voices" when he committed the offenses. In addition, one of appellant's mental health experts testified that although appellant claimed he had heard voices on the day of the crime, the facts of the case and appellant's statements to the police did not comport with appellant's defense that he could not tell right from wrong at the time of the offenses. That expert also acknowledged that the evidence actually implied that appellant knew his actions were wrong at the time. In sum, appellant did not establish by clear and convincing evidence that he was legally insane under § 13–502(A).

¶ 14 The trial court did not commit error, let alone fundamental error, by giving an instruction that complied with *Corley* and § 13–502(A) and that did not prejudice appellant's defense. Accordingly, the judgment of convictions and the sentences imposed are affirmed.

CONCURRING: WILLIAM E. DRUKE, JUDGE, and M. JAN FLÓREZ, Judge.