IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

THE STATE OF ARIZONA,      )
                           )        2 CA-CR 2007-0340
                 Appellee, )        DEPARTMENT A
                           )
            v.             )        O P I N I O N
                           )
NATHAN ANDRES LEYVAS,      )
                           )
                Appellant. )
_____)

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20064780

Honorable Howard Hantman, Judge

AFFIRMED

Terry Goddard, Arizona Attorney General
  By Kent E. Cattani and Amy M. Thorson                                    Tucson
                                                                Attorneys for Appellee

Isabel G. Garcia, Pima County Legal Defender
  By Scott A. Martin                                                       Tucson
                                                                Attorneys for Appellant

P E L A N D E R, Chief Judge.

¶1        After a jury trial, Nathan Leyvas was convicted of five counts of sexual assault

and two counts each of kidnapping, assault, and attempted armed robbery. The trial court

sentenced him to consecutive and concurrent, presumptive prison terms totaling forty years. On appeal, Leyvas contends the court erred by allowing a witness to identify him at trial without first having held a *Dessureault*[1] hearing and by denying his motion for judgment of acquittal on the two attempted armed robbery charges. We affirm.

## Background

**¶2**      "We view the facts and all reasonable inferences therefrom in the light most favorable to upholding the verdicts." *State v. Tamplin*, 195 Ariz. 246, ¶ 2, 986 P.2d 914, 914 (App. 1999). One evening in December 2006, the victims, two female college students, were walking in a Tucson city park when a man riding a bicycle threatened them with a gun and subsequently sexually assaulted both of them multiple times. At one point the women heard the man open a wrapper, possibly containing a condom.

**¶3**      After the assaults, the man asked if either woman had any money. They said no, and he then allowed them to walk away. When they realized he was no longer behind them, they ran to a convenience store and called 911. Police took the victims for medical examinations, but no male DNA[2] evidence was ever found. Both victims described their assailant as a skinny Hispanic male in his early twenties who was wearing a gray sweatshirt and gray beanie cap.

**¶4**      After Leyvas became a suspect, police searched his bedroom at his parent's house and found an air pistol, gray beanie, gray sweatshirt, and a condom. Police also

---

[1]*State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969).

[2]Deoxyribonucleic acid.

searched his girlfriend's house and found the mountain bicycle that Leyvas had used on the night of the assaults.

¶5 Leyvas's defense at trial was mistaken identity. Neither of the two victims was able to positively identify him as the assailant.[3] But a female jogger, M., who twice that night had passed by a man on a bicycle, identified Leyvas as the man she had seen at the park on the night of the crimes. A few weeks before trial, and about seven months after the crimes, a detective showed M. a six-person photographic lineup that included Leyvas's photograph. M. identified another man as the person she had seen at the park that night. In a subsequent pretrial interview, the prosecutor told M. she had "identified the wrong person."

¶6 Before trial, citing only *Dessureault*, Leyvas moved to preclude M. from identifying him in court on the ground that any such identification would be tainted by the prosecutor's comment. After a brief discussion, and when Leyvas was unable to produce any "analogous" case law, the trial court determined *Dessureault* did not apply "to this fact situation" and allowed M. to identify Leyvas at trial. That identification occurred for the first time on redirect examination and then again in response to questions by the jury, when M. answered she was sure Leyvas was the man she had seen at the park. M. further testified she had "[n]ot [been] very confident at all" when she previously had identified a different man in the photographic lineup. She also identified the mountain bicycle found at Leyvas's

_____

[3]One victim, who before trial had not been asked to identify the assailant from a photographic or live lineup, testified that Leyvas "match[ed] the description of the person" she had described to police. When the other victim was asked if she saw "anybody in the courtroom that [she] recognize[d] as being from that evening," she said she did not know but did not "think so."

girlfriend's house as the one she had seen the man riding at the park and testified that a recording of Leyvas's voice was consistent with the voice "tone range" of the man who had spoken to her while she jogged.

**Discussion**

## I. In-court identification

¶7        Leyvas contends his due process rights were violated when the trial court allowed M. to identify him in court without first having held a *Dessureault* hearing to determine whether the pretrial identification procedure was unduly suggestive and, if so, whether that would taint any proposed in-court identification by M.  He acknowledges that the pretrial photographic lineup, in which M. "identified a picture of another man," was not suggestive.  Nonetheless, Leyvas argues, the prosecutor's later telling M. "she had chosen the wrong man's photo" "was sufficient to trigger the *Dessureault* paradigm," "requir[ing] the trial court to make an initial determination whether the pretrial identification circumstances were unduly suggestive."

¶8        The state argues, as it did below, that *Dessureault* does not apply because M. had failed to identify Leyvas in the pretrial photographic lineup.  Similarly, in denying Leyvas's motion to preclude M. from identifying him at trial, the trial court accepted the state's argument that an allegedly "suggestive nonidentification" does not "fall[] under *Dess[u]reault*."  We do not find *Dessureault* necessarily limited to situations in which an allegedly suggestive pretrial identification of the defendant has occurred. *See State v. Myers*, 117 Ariz. 79, 83-84, 570 P.2d 1252, 1256-57 (1977) (after hearing at which victim addressed

4

circumstances surrounding his observation of offender at time of crime, victim's identification of defendant allowed at trial even though victim "had been unable to identify the defendant in a photo lineup or in a live lineup" before trial and had selected another person in the live lineup); *cf. State v. Alexander*, 108 Ariz. 556, 564, 503 P.2d 777, 785 (1972) (comments made to witnesses that they had "selected the wrong photo" in photographic lineup one of multiple, relevant factors contributing to finding of "illegal," unduly suggestive pretrial identification procedure; witnesses eventually identified defendant in second, pretrial photographic lineup, and *Dessureault* hearing held). But we find no reversible error under the particular circumstances of this case.

¶9 We review the trial court's denial of Leyvas's motion to preclude M.'s in-court identification for an abuse of discretion. *See State v. Prion*, 203 Ariz. 157, ¶ 14, 52 P.3d 189, 192 (2002). And, "[w]e review the fairness and reliability of a challenged identification for clear abuse of discretion." *State v. Lehr*, 201 Ariz. 509, ¶ 46, 38 P.3d 1172, 1183 (2002). But we review de novo the question whether a common law procedural rule with constitutional underpinnings, such as that set forth in *Dessureault*, applies to a particular factual scenario. *See State v. Newell*, 212 Ariz. 389, ¶¶ 27-28, 132 P.3d 833, 841 (2006) (legal question whether *Miranda v. Arizona*, 384 U.S. 436 (1966), applies to specific facts of case reviewed de novo); *State v. Rosengren*, 199 Ariz. 112, ¶ 9, 14 P.3d 303, 307 (App. 2000) (due process claims reviewed de novo); *cf. State v. Apelt*, 176 Ariz. 349, 362, 861 P.2d 634, 647 (1993) ("We agree with the trial court that the identification in this case does not come within the ambit of *Dessureault*.").

¶10 "The criminal defendant's due process rights include the right to a fair identification procedure." *State v. Nieto*, 118 Ariz. 603, 605, 578 P.2d 1032, 1034 (App. 1978); *see also State v. Brady*, 145 Ariz. 520, 530, 703 P.2d 464, 474 (1985). "The Due Process Clause of the Fourteenth Amendment requires us to ensure that any pretrial identification procedures are conducted in a manner that is fundamentally fair and secures the suspect's right to a fair trial." *Lehr*, 201 Ariz. 509, ¶ 46, 38 P.3d at 1183. Even when "a pretrial identification procedure is overly suggestive, however, [that] does not bar the admission of an identification." *Id*. "Instead, the question is whether the identification is reliable in spite of any suggestiveness." *Id.* "Thus, there is a two-part test for determining admissibility: (1) whether the method or procedure used [in the pretrial procedures] was unduly suggestive, and (2) even if unduly suggestive, whether it led to a substantial likelihood of misidentification, i.e., whether it was reliable." *Id*.; *see also Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

¶11 In *Dessureault*, about nine hours after an armed robbery, the victim/witness identified the defendant in a live lineup that included him and three others. 104 Ariz. at 382, 453 P.2d at 953. At trial, the victim again identified Dessureault as the robber. *Id*. Our supreme court determined that the pretrial identification procedure was unduly suggestive because Dessureault was the only person in the lineup who had a moustache and a beard, as had the robber. *Id*. at 383, 453 P.2d at 954. Under the circumstances, the court held that, "although the pretrial identification was unduly suggestive, the in-court identification had an independent source other than the lineup." *Id*. at 384, 453 P.2d at 955. Because the legally

6

flawed pretrial identification "was not conducive to irreparable mistaken identification," and because the victim's "identification was positive and unequivocally made from the defendant's face," the court found no reversible error. *Id*. at 385, 453 P.2d at 956.

¶12      Referring to situations in which "pretrial identifications" of defendants have been made, *id*. at 383, 453 P.2d at 954, the court set forth the following "effective procedures at the trial court level":

> *First*, if at the trial the proposed in-court identification is challenged, the trial judge must immediately hold a hearing in the absence of the jury to determine from clear and convincing evidence whether it contained unduly suggestive circumstances. In this the burden is on the prosecution to establish from all the circumstances surrounding the pretrial identification that it was not such as to be unduly suggestive.
>
> *Second*, if the trial judge concludes that the circumstances of the pretrial identification were unduly suggestive or that the prosecution has failed to establish by clear and convincing evidence that they were not, then it is the prosecution's burden to satisfy the trial judge from clear and convincing evidence that the proposed in-court identification is not tainted by the prior identification.
>
> *Third*, if requested, the court must instruct the jury that before returning a verdict of guilty it must be satisfied beyond a reasonable doubt that the in-court identification was independent of the previous pretrial identification or if not derived from an independent source, it must find from other evidence in the case that the defendant is the guilty person beyond a reasonable doubt.

*Id*. at 384, 453 P.2d at 955. Referring to those procedures as a "paradigm," and based solely on the prosecutor's having told M. before trial that she had chosen the wrong man's

7

photograph in the lineup, Leyvas argues "[t]he pretrial identification procedure *in toto* in this case was certainly suggestive, triggering a *Dessureault* inquiry." We disagree.

**¶13** "The requirements of *Dessureault* are sequential," triggered only if and when a determination is made that a pretrial identification procedure was unduly suggestive. *State v. Harris*, 23 Ariz. App. 358, 359, 533 P.2d 569, 570 (1975). As this court explained in *Harris*:

> [I]f the trial court finds that the pretrial identification was not unduly suggestive, it need not do any of the following: (a) [d]etermine whether an in-court identification was tainted; (b) instruct that the jury must be satisfied beyond a reasonable doubt that the in-court identification was independent; and (c) instruct that the jury must be satisfied beyond a reasonable doubt that the pretrial identification was fair.

*Id*. at 360, 533 P.2d at 571; *see also State v. Taylor*, 27 Ariz. App. 330, 333, 554 P.2d 926, 929 (1976) (when pretrial identification procedures not unduly suggestive, "there is no need to determine whether the requirements of [*Dessureault*] were met") (citation omitted).

**¶14** For the reasons set forth below, we agree with the trial court that *Dessureault* does not apply to the particular situation presented here. Accordingly, we conclude the court did not err in failing to conduct a pretrial *Dessureault* hearing or to follow the other procedural steps outlined in that case.[4]

---

[4]Though not dispositive, we note Leyvas never asked the trial court to hold a pretrial hearing to probe any of the issues he now raises. His cryptic motion to preclude had only one aim—to prevent M. from identifying him at trial because of the taint allegedly caused by the prosecutor's earlier comment to her. When, as here, a factual scenario does not fall squarely within *Dessureault*, a defendant should specifically request a hearing, explaining why it is needed and what relevant topics will be explored. *See State v. Reid*, 114 Ariz. 16, 25-26, 559 P.2d 136, 145-46 (1976) (trial court should have held pretrial evidentiary hearing,

8

¶15 First, as noted above, the court in *Dessureault* stated that, "if at the trial the proposed in-court identification is challenged, the trial judge must immediately hold a hearing in the absence of the jury to determine from clear and convincing evidence whether it contained unduly suggestive circumstances." 104 Ariz. at 384, 453 P.2d at 955. But the term "it" in that statement must have referred to a witness's "pretrial identification," and here there was none. *Id.* Because M. did not identify Leyvas before trial and had not yet been asked whether she could do so during trial, it is not at all clear what purpose would have been served by conducting a *Dessureault* hearing. And, from a practical standpoint, such a hearing, conducted in a vacuum, would not readily facilitate the trial court's gauging whether any proposed in-court identification of Leyvas by M. would somehow be tainted by the prosecutor's pretrial comment to her.

¶16 Second, the primary concerns addressed in *Dessureault* and its progeny, and the mischief those cases seek to avoid, are not present here. Generally, "*Dessureault* deals with fairness concerns that arise when a witness (often the victim) of a crime is confronted

specifically requested and fully explained by defense, to determine if witness's identification of defendant at preliminary hearing tainted by pretrial procedures); *McMillian v. State*, 265 N.W.2d 553, 558 (Wis. 1978) (although defendant unsuccessfully objected to admission of in-court identification testimony, any right to *Dessureault*-type hearing was waived "since no request was made" for such hearing); *cf. State v. Cartwright*, 155 Ariz. 308, 311, 312, 746 P.2d 478, 481, 482 (1987) (no error in failing to include witness in pretrial *Dessureault* hearing when she first identified defendant on redirect examination at trial and had "never participated in a live line-up and never made a pre-trial identification of any type," even though she might have been shown photographs before trial); *State v. Dominguez*, 192 Ariz. 464, ¶ 14, 967 P.2d 136, 140 (App. 1998) (no fundamental error in failure to give *Dessureault* jury instruction when trial court made no determination "that an out-of-court identification procedure was unduly suggestive" and when "defendant failed to request a *Dessureault* hearing").

with a live or photographic lineup and asked whether the perpetrator is among them." *Apelt*, 176 Ariz. at 362, 861 P.2d at 647. The primary concern arising from that scenario is that "[u]nduly suggestive pretrial [identification] procedures may unfairly cause a witness to misidentify the defendant, and then to repeat the misidentification at trial." *State v. Smith*, 146 Ariz. 491, 496, 707 P.2d 289, 294 (1985); *see also Simmons v. United States*, 390 U.S. 377, 383-84 (1968) ("Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification."). As the court in *Smith* stated, "The 'very substantial likelihood of an irreparable misidentification' at trial deriving from such an unfair pretrial identification procedure is a primary danger to be avoided." 146 Ariz. at 496, 707 P.2d at 294, *quoting Simmons*, 390 U.S. at 384; *see also State v. Osorio*, 187 Ariz. 579, 581, 931 P.2d 1089, 1091 (App. 1996); *State v. Strong*, 185 Ariz. 248, 250, 914 P.2d 1340, 1342 (App. 1995). Again, because M. did not identify Leyvas before trial at all, through an unfair procedure or otherwise, this case does not present the "primary danger" toward which the applicable Arizona decisions are directed. *Smith*, 146 Ariz. at 496, 707 P.2d at 294.

¶17    Third, whether a witness may reliably make an "in-court identification of the defendant, untainted by prior identification procedures, is preliminarily a question for the trial court which will not be disturbed on appeal unless there is clear and manifest error." *Taylor*, 27 Ariz. App. at 332, 554 P.2d at 928; *see also Smith*, 146 Ariz. at 497, 707 P.2d at 295; *Myers*, 117 Ariz. at 84, 570 P.2d at 1257. Leyvas acknowledges "[t]he trial court apparently

10

determined that [M.'s] choice of a man other than [Leyvas] from the photo lineup was not an unduly suggestive pretrial identification." We find no "clear and manifest error" in that implicit determination, which Leyvas does not directly challenge. *Taylor*, 27 Ariz. App. at 332, 554 P.2d at 928.

¶18 He argues, however, "the trial court failed to consider the key additional circumstances on which [his] *Dessureault* motion was based"—the prosecutor's having informed M. "she had picked the wrong man from the [photographic] lineup." But the court was well aware of that fact when it denied Leyvas's motion. And even though the trial court did not expressly determine whether the prosecutor's comment to M. rendered the pretrial identification procedure unduly suggestive or otherwise unconstitutional, we conclude it did not, based on the same, undisputed facts before that court. *See State v. Money*, 110 Ariz. 18, 21, 23, 514 P.2d 1014, 1017, 1019 (1973) (supreme court independently evaluated "'totality of the circumstances' surrounding the identification procedure to determine whether the lineup was unduly suggestive," concluding it was not); *Taylor*, 27 Ariz. App. at 332, 333, 554 P.2d at 928, 929 (noting its "initial inquiry is to determine whether the [pretrial] photographic lineup was unduly suggestive," appellate court "determined" it was not).

¶19 As noted earlier, during a pretrial interview the prosecutor told M. she had "identified the wrong person" in the photographic lineup shown to her about seven months after the crime. But the record does not reflect that the prosecutor ever steered M. to the "right person." *Cf. Alexander*, 108 Ariz. at 564, 503 P.2d at 785 (unduly suggestive procedure found when police showed witnesses multiple photographic lineups, detective told

11

witnesses they had first selected wrong photo, police artist drew facial hair onto photos of defendant but no others, and detective later told witnesses they "had selected the 'correct' photo" in second lineup session). For example, the record does not suggest the prosecutor showed or told M. which photograph in the lineup depicted Leyvas. *Cf. United States v. Woolery*, 735 F.2d 818, 821 (5th Cir. 1984) ("Though there is nothing improper in asking an uncertain witness to look at a line-up a second time, it is unacceptable to do so in a way that indicates to the witness whom he should select."). Nor does the record suggest the prosecutor, either before or during trial, informed M. that the person on trial, Leyvas, was the perpetrator or the person she actually had seen at the park on the night of the crimes. In addition, the record does not reflect how Leyvas's appearance at trial compared to the depiction of him in the photographic lineup.

¶20 Leyvas maintains, however, that the prosecutor's having told M. before trial she had selected "the wrong person" in the photographic lineup, after she had "affirmatively identified someone other than [him]," "tainted as a matter of law" M.'s subsequent in-court identification and "deprived him of due process" because M. "was then permitted to make an identification at trial of the only person in the courtroom whose picture had been in that photo lineup: [Leyvas]." Citing *Simmons* and *Foster v. California*, 394 U.S. 440 (1969), Leyvas contends the prosecutor's comment to M. rendered the pretrial identification procedures unduly suggestive because it greatly increased the likelihood M. would recognize Leyvas in court from the first photographic lineup and identify him as the man she had seen in the park. But nothing in the record supports that hypothesis, and both cases on which

12

Leyvas relies involved a situation where the witness had positively identified the defendant before trial.

¶21　　　　In *Foster*, the witness finally identified the defendant in a second live lineup after failing to identify him in a previous lineup and one-to-one confrontation. *Foster*, 390 U.S. at 443. And the defendant was the only person who appeared in both lineups. *Id*. Under those circumstances, the Supreme Court found the procedure impermissibly suggestive because, "[i]n effect, the police repeatedly said to the witness, 'This is the man.'" *Id*. In *Simmons*, all witnesses identified the defendant in pretrial photographic lineups. 390 U.S. at 382.

¶22　　　　Here, in contrast, M. did not identify Leyvas in the pretrial procedure and was not asked to identify him again before trial. Therefore, the main concern addressed in *Foster* and *Simmons*—that law enforcement officers will unduly influence a witness in making a mistaken identification and then repeating that misidentification at trial—is not present here. *See Smith*, 146 Ariz. at 496, 707 P.2d at 294.

¶23　　　　In addition, although we do not condone, and indeed strongly discourage, the practice of telling a witness before trial she chose the "wrong" person in a lineup, that is less suggestive or problematic than informing her she made the "right" choice. *See United States v. Moskowitz*, 581 F.2d 14, 20 (2d Cir. 1978). As the court in *Moskowitz* explained, that is because informing a witness of an incorrect choice "is far less likely to produce an 'irreparable misidentification' because it merely narrows the field from which the witness will make a second selection, and it does not involve any improper reinforcement or

13

confirmation of the second selection itself." *Id*. *But see United States v. Jarvis*, 560 F.2d 494, 500 (2d Cir. 1977) (informing witness of correctness or incorrectness of pretrial identification might taint later identification so as to require reversal).

¶24 Similarly, our supreme court has expressed concern that informing a witness he or she chose correctly from a lineup could "lessen or eliminate any doubt" the witness might have had before the identification procedure. *State v. Richie*, 110 Ariz. 590, 593, 521 P.2d 1136, 1139 (1974); *see also Money*, 110 Ariz. at 23, 24, 514 P.2d at 1019, 1020 (police officer's informing victims they had chosen from live lineup "the owner of the car which had been used by their three assailants" might have made them more certain of their identifications but did not unfairly taint their in-court identifications). In *Richie*, the victim identified three robbers in a photographic lineup. 110 Ariz. at 591, 521 P.2d at 1137. An officer then told the victim before the preliminary hearing that "he had chosen the correct pictures and that two of the suspects were already in custody including the defendant." *Id*. The trial court denied the defendant's motion to suppress the victim's proposed in-court identification, urged on the ground that the police officer's comment tainted the identification process. *Id*. In affirming, our supreme court concluded, "where the lineup was not suggestive in the first place, such subsequent comments cannot taint an initially fair identification procedure or the in-court identification." *Id*. at 593, 521 P.2d at 1139; *see also State v. McDonald*, 111 Ariz. 159, 164, 526 P.2d 698, 703 (1974); *Money*, 110 Ariz. at 24, 514 P.2d at 1020; *Taylor*, 27 Ariz. App. at 333, 554 P.2d at 929. Again, in this case no such

suggestive or confirmatory comments were made to M. so as to reinforce any prior identification or to naturally or inevitably lead her to identify Leyvas at trial.

¶25 We also find significant that M. only identified Leyvas on redirect examination, *after* he had introduced the photographic lineup in evidence and questioned M. about her prior inability to identify him in that lineup.[5] Thus, her in-court identification essentially was prompted by Leyvas's own trial strategy and cross-examination. "The invited error doctrine applies to situations where evidence adduced or comments made by one party make otherwise irrelevant evidence relevant or require some response or rebuttal." *State v. Wilson*, 185 Ariz. 254, 259, 914 P.2d 1346, 1351 (1995). When a party "open[s] the door" to later, otherwise objectionable testimony, there is no error. *State v. Garcia*, 133 Ariz. 522, 526, 652 P.2d 1045, 1049 (1982). But when error is invited by opening the door, "the evidence or response must be 'pertinent'; that is, it must be specifically responsive to the invitation." *Wilson*, 185 Ariz. at 259, 914 P.2d at 1351.

¶26 Here, M. did not identify Leyvas on direct examination and was not asked to do so. Therefore, nothing in the state's direct examination of M. prompted the defense inquiry into identification-related issues on cross-examination. By voluntarily and strategically probing those issues, Leyvas opened the door to the state's redirect examination, which was "specifically responsive to the invitation." *Id*. Accordingly, even if M.'s in-court

---

[5]Leyvas failed to object to M.'s in-court identification at trial. But "where a motion in limine is made and ruled upon, the objection raised in that motion is preserved for appeal, despite the absence of a specific objection at trial." *State v. Burton*, 144 Ariz. 248, 250, 697 P.2d 331, 333 (1985); *see also State v. Reed*, 114 Ariz. 16, 26, 559 P.2d 136, 146 (1976).

identification of Leyvas were otherwise objectionable, Leyvas invited any error in that regard.

¶27        Because we find *Dessureault* inapplicable to the situation presented here, M.'s inability to identify Leyvas before trial went to her credibility and the weight to be given her testimony, not to the admissibility of her in-court identification. *See Prion*, 203 Ariz. 157, ¶ 18, 52 P.3d at 193; *State v. McCall*, 139 Ariz. 147, 155, 677 P.2d 920, 928 (1983); *see also Myers*, 117 Ariz. at 84-85, 570 P.2d at 1257-58 ("'[w]henever possible, the fact that witnesses were previously unable to identify a defendant should properly go to the credibility and not to the admissibility of subsequent positive in-court identifications'"), *quoting People v. Belenor*, 246 N.W.2d 355, 357 (Mich. Ct. App. 1976) (alteration in *Myers*); *Nieto*, 118 Ariz. at 606, 578 P.2d at 1035.

¶28        We further note that identifications made for the first time in court generally are not deemed unduly suggestive or impermissible. *See Cartwright*, 155 Ariz. at 311, 746 P.2d at 481 (witness not involved in pretrial identification procedure or *Dessureault* hearing could nonetheless identify defendant for first time at trial); *State v. Meeker*, 143 Ariz. 256, 265, 693 P.2d 911, 920 (1984) (defendant's sitting at defense table with sign that said "defense" not unduly suggestive); *Myers*, 117 Ariz. at 84, 570 P.2d at 1257 ("The law does not preclude a victim from identifying his attacker, presented alone, at a later time just because the victim could not identify the attacker in a group earlier."); *State v. Brady*, 16 Ariz. App. 393, 396, 493 P.2d 939, 942 (1972) (*Dessureault*'s lineup doctrine not extended to in-court identifications); *see also State v. Valenzuela*, 722 F.2d 1431, 1432 (9th Cir. 1983).

16

This is because a witness who testifies in court is subject to thorough cross-examination about the witness's identification testimony. *See Cartwright*, 155 Ariz. at 311, 746 P.2d at 481 (no need for second *Dessureault* hearing when witness identified defendant for first time at trial and was thoroughly cross-examined); *see also Prion*, 203 Ariz. 157, ¶ 17, 52 P.3d at 193.

¶29 Here, Leyvas thoroughly questioned M. about her mistaken identification in the photographic lineup and how the prosecutor had later informed her that she had chosen "the wrong person." M. was examined and cross-examined about her level of awareness on the night in question, how often and for how long she had observed the man on the bicycle, and the discrepancies between her testimony and her earlier statement to the police. She acknowledged that she had described the bicycle as a BMX type, not a mountain bicycle, and that she had thought the man had been wearing a hooded sweatshirt, not a beanie cap. M. also noted at trial that nine months had passed since the crime and that her memory at trial was not as clear as it had been shortly after the incident. Any conflicts or other weaknesses in her testimony were matters for the jury to consider. *See State v. Nordstrom*, 200 Ariz. 229, ¶ 27, 25 P.3d 717, 730 (2001); *see also McCall*, 139 Ariz. at 155, 677 P.2d at 928 ("a witness' previous inability to identify a defendant goes to the credibility of the witness, not the admissibility of subsequent identifications").

¶30 Leyvas also argues that, because the trial court erred in not "find[ing] the *Dessureault* paradigm triggered on these facts, it did not proceed to the second *Dessureault* step: requiring the State to prove by clear and convincing evidence that the suggestive

17

pretrial identification procedure did not taint the proposed in-court identification." *See* ¶ 12, *supra*. As Leyvas correctly notes, *Dessureault*'s "second step is accomplished using the factors set forth in *Neil v. Biggers*, 409 U.S. 188, [199] . . . (1972)." *See Lehr*, 201 Ariz. 509, ¶ 48, 38 P.3d at 1183-84. However, because the trial court properly found *Dessureault* not applicable and because the pretrial identification procedure here was not unduly suggestive, we need not address whether M.'s in-court identification of Leyvas was reliable.[6] *See id.*; *Smith*, 146 Ariz. at 497, 707 P.2d at 295.

---

[6]Leyvas maintains an appellate court should not evaluate in the first instance the factors listed in *Biggers* when, as here, the trial court did not hold a *Dessureault* hearing and, therefore, never required the state to prove by clear and convincing evidence that the in-court identification was untainted. *See Dessureault*, 104 Ariz. at 384, 453 P.2d at 955. We agree that in appropriate circumstances—when a *Dessureault* hearing is required and conducted and then proceeds to the second step—it is highly preferable for the trial court to rule on the issues of taint and reliability of a proposed in-court identification after evaluating the factors in *Biggers*. *See Smith*, 146 Ariz. at 497, 707 P.2d at 295; *Myers*, 117 Ariz. at 84, 570 P.2d at 1257. But if the appellate court can determine "from the record on clear and convincing evidence that the in-court identification was not tainted by the prior identification procedures . . . the conviction will be affirmed." *Dessureault*, 104 Ariz. at 384, 453 P.2d at 955. Other appellate courts have examined the *Biggers* factors, based on the trial court record, when considering whether an in-court identification was reliable under the totality of the circumstances. *See Lehr*, 201 Ariz. 509, ¶¶ 48-52, 38 P.3d at 1184; *Nieto*, 118 Ariz. at 605-06, 578 P.2d at 1034-35 (although no *Dessureault* hearing, appellate court evaluated *Biggers* factors to determine reliability of identification at pretrial hearing); *see also State v. Tresize*, 127 Ariz. 571, 574-75, 623 P.2d 1, 4-5 (1980). Leyvas never challenged the reliability of M.'s in-court identification of him, nor was the trial court requested or required to address that issue. Therefore, we likewise need not address the *Biggers* factors here. In any event, based on the totality of the circumstances, we cannot say the pretrial identification procedure, even if unduly suggestive, "led to a substantial likelihood of [M.'s] misidentification" of Leyvas at trial. *Lehr*, 201 Ariz. 509, ¶ 46, 38 P.3d at 1183; *see also Nieto*, 118 Ariz. at 605, 578 P.2d at 1034 (courts consider totality of circumstances to determine whether very substantial likelihood defendant misidentified); *cf. Alexander*, 108 Ariz. at 564, 503 P.2d at 785. Absent such a showing, Leyvas did not establish a violation of his due process rights. *See State v. Williams*, 166 Ariz. 132, 137, 800 P.2d 1240, 1245 (1987).

¶31 Several other points on the subject of reliability deserve mention. First, Leyvas never requested a hearing outside the presence of the jury to permit the trial court to evaluate and determine the reliability of any in-court identification M. might make. Second, after M. identified Leyvas on redirect examination as the man she had seen at the park on the night in question, he did not object to that testimony or move to strike it on the ground of unreliability that he now urges. Third, we find purely speculative Leyvas's argument that "the State would not have been able to prove by clear and convincing evidence . . . [M.'s] subsequent in-court identification of [him] was not tainted by the suggestive procedure," had it been required to do so. Accordingly, we reject Leyvas's contention that his convictions must be reversed because M.'s in-court identification of him was tainted and unreliable as a matter of law.[7]

¶32 In sum, the "effective procedures at the trial court level," as outlined in *Dessureault*, 104 Ariz. at 384, 453 P.2d at 955, arguably might apply even when, as here, no pretrial identification has occurred. But, under the circumstances presented here, we cannot say the trial court erred in finding *Dessureault* inapplicable and, therefore, denying Leyvas's motion to preclude M.'s in-court identification.

---

[7]Leyvas correctly points out that, because the trial court found *Dessureault* inapplicable, he was not entitled to and did not request "the defense-favorable jury instruction mandated by the [*Dessureault*] paradigm's third step." *See* ¶ 12, *supra*. *Cf. State v. Stow*, 109 Ariz. 282, 284, 508 P.2d 1144, 1146 (1973) (*Dessureault* jury instruction, "if requested as was done here, is mandatory" in cases to which *Dessureault* applies). We note, however, the trial court instructed the jury that "it is necessary and incumbent upon the State to prove beyond a reasonable doubt that the defendant was the one who committed" the crimes and that, if the jury "entertain[ed] any reasonable doubt as to the question of the identity of the person who committed these offenses, you must find the defendant not guilty."

## II. Rule 20 motion on attempted armed robbery charges

¶33        Leyvas contends the trial court erroneously denied his motion, made pursuant to Rule 20, Ariz. R. Crim. P., because the state presented insufficient evidence "of all the elements of attempted armed robbery." On appeal, we review the court's denial of a Rule 20 motion for an abuse of discretion. *See State v. Paris-Sheldon*, 214 Ariz. 500, ¶ 32, 154 P.3d 1046, 1056 (App. 2007). We will reverse only if there is "no substantial evidence to warrant a conviction." Ariz. R. Crim. P. 20; *see also Paris-Sheldon*, 214 Ariz. 500, ¶ 32, 154 P.3d at 1056. "'Substantial evidence is proof that reasonable persons could accept as sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" *State v. Hall*, 204 Ariz. 442, ¶ 49, 65 P.3d 90, 102 (2003), *quoting State v. Spears*, 184 Ariz. 277, 290, 908 P.2d 1062, 1075 (1996). Evidence sufficient to support a conviction can be direct or circumstantial. *State v. Pena*, 209 Ariz. 503, ¶ 7, 104 P.3d 873, 875 (App. 2005).

¶34        Section 13-1902(A), A.R.S., provides:

> A person commits robbery if in the course of taking any property of another from his person or immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property.

*See also State v. Benenati*, 203 Ariz. 235, ¶ 26, 52 P.3d 804, 811 (App. 2002). Section 13-1904(A), A.R.S., elevates "robbery" to "armed robbery" when the robber is armed with, uses, or threatens to use a deadly weapon or simulated deadly weapon. *See also State v. Lopez*, 158 Ariz. 258, 263, 762 P.2d 545, 550 (1988). "The essential elements of an attempted robbery are (1) intent to commit robbery and (2) an overt act towards that commission."

20

*State v. Clark*, 143 Ariz. 332, 334, 693 P.2d 987, 989 (App. 1984); *see also* A.R.S. § 13-1001(A)(2); *State v. McCullough*, 94 Ariz. 209, 210, 382 P.2d 682, 683 (1963).

¶35     Leyvas argues there "was no substantial evidence that the assailant intended to force the women to give him their property and no substantial evidence that he took any actions planned to culminate in taking the victims' property" because he "innocuous[ly]" asked them if they had any money. But Leyvas was holding a gun or "simulated deadly weapon" throughout his encounter with the victims. And one victim testified he was holding it when he asked them whether they had any money. Thus, the evidence of Leyvas's actions and statements permitted an inference that he had intended to take property from the women by force. *See State v. Vann*, 11 Ariz. App. 180, 182, 463 P.2d 75, 77 (1970) ("What the defendant does or fails to do and what he says may be evidence of what is going on in his mind."); *see also State v. Greene*, 192 Ariz. 431, ¶ 39, 967 P.2d 106, 115 (1998) (jury may infer state of mind from defendant's behavior at or near time of offense). Additionally, his requesting money from the victims while he was holding a gun was an act in furtherance of the crime, sufficient to support his two convictions for attempted armed robbery. *See Vann*, 11 Ariz. App. at 182, 463 P.2d at 77; *see also State v. Wilson*, 120 Ariz. 72, 75, 584 P.2d 53, 56 (App. 1978) (grabbing bag was overt act in furtherance of attempted theft and sufficient to infer intent to commit crime). Therefore, the trial court did not abuse its discretion by denying his Rule 20 motion on the attempted armed robbery charges.

**Disposition**

¶36        Leyvas's convictions and sentences are affirmed.


_____
JOHN PELANDER, Chief Judge

CONCURRING:


_____
JOSEPH W. HOWARD, Presiding Judge


_____
PHILIP G. ESPINOSA, Judge