NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

WILLIAM HARTWELL, *Appellant.*

No. 1 CA-CR 17-0577
FILED 4-18-2019

Appeal from the Superior Court in Maricopa County
No. CR2015-001482-001
The Honorable Sherry K. Stephens, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Janelle A. McEachern Attorney at Law, Chandler
By Janelle A. McEachern
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge James B. Morse Jr. and Judge Jon W. Thompson joined.

_____

**S W A N N**, Judge:

¶1            William James Hartwell appeals his convictions and sentences for conspiracy to illegally control an enterprise, illegal control of an enterprise, pandering, operating a house of prostitution, receiving earnings of prostitution, sex trafficking, sexual assault, and aggravated assault.  For reasons that follow, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2            We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against the defendant.  *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996).  The state presented evidence of the following relevant facts.

¶3            Between October 2012 and June 2013, Hartwell owned New Media Studios in Phoenix, Arizona.  Hartwell claimed to provide patrons with "self-serve" studio space, camera equipment, and "models" for the purpose of creating amateur pornography.  Detectives believed Hartwell was using the studio as a front for prostitution, and initiated an undercover investigation.

¶4            Detectives discovered that Hartwell advertised for the studio mainly on websites commonly associated with prostitution.  Many of the advertisements were for escort services, used terminology typical of prostitution, and lacked any reference to pornography.  Hartwell hired female "models" to work at the studio, and advertised them based on their physical appearance, age, and willingness to perform an array of sexual acts.  Hartwell told the "models" that the operation was legal because they were engaged in pornography, not prostitution.

¶5            Patrons of the studio were required to undergo a "penis check" to screen for law enforcement, choose from a line-up of "models," and pay only in cash.  Although Hartwell claimed patrons paid per "scene," the payment schedule was based on the type of sexual act provided.

Hartwell controlled all money received at the studio, determined how to compensate employees, and paid for the advertisements.

¶6          Patrons were also required to take approximately eight pornographic images of the "model" with the studio's unsophisticated camera equipment.  With some exceptions, the "model" or patron would turn the camera off before engaging in sex acts, and patrons would rarely request a copy of the pornographic material they created.  As a matter of practice, patrons signed agreements that any content they created was for their personal use only.  Although the studio averaged at least 24 patrons per day, a relatively minimal number of pornographic images and videos were stored on electronic devices at the studio, and even fewer were ever uploaded to a third-party website.  Hartwell's studio did not have an active website.

¶7          Hartwell required all "models" to engage in sexual acts with him, acted as though he "owned" them, and was known to be volatile.  C.S. and S.M. worked for Hartwell at the studio.  In February 2013, Hartwell demanded C.S. engage in oral sex with him, pushing his penis into her mouth with such force that she vomited.  In April 2013, Hartwell tied S.M. to a bed in the studio, choked her, forced his penis into her mouth, and ripped out her lip and wrist piercings.  Although S.M. expressed interest in bondage, domination, sadism, machoism ("BDSM"), she told Hartwell to "stop" but he ignored her requests.

¶8          The state charged Hartwell with the following: two counts of conspiracy to illegally control or conduct an enterprise (class 3 felonies); two counts of illegal control of an enterprise (class 3 felonies); one count of pandering (class 5 felony), one count of operating or maintaining a house of prostitution (class 5 felony); one count of receiving earnings of prostitution (class 5 felony); one count of sex trafficking (class 2 felony); two counts of sexual assault, as to C.S. and S.M. (class 2 felonies); and one count of aggravated assault, as to S.M. (class 6 felony).

¶9          The case proceeded to trial and, at the close of evidence, the superior court denied Hartwell's motion for judgment of acquittal under Ariz. R. Crim. P. ("Rule") 20.  The jury found Hartwell not guilty of the sexual assault count involving C.S. but found him guilty of all other counts. The court sentenced him to an aggregate term of 24 years' imprisonment. Hartwell appeals.

**DISCUSSION**

I. THE STATE PRESENTED SUFFICIENT EVIDENCE TO SURVIVE A RULE 20 MOTION AND TO SUPPORT HARTWELL'S CONVICTIONS.

¶10 Hartwell challenges the superior court's denial of his Rule 20 motion for judgment of acquittal, arguing the jury's verdicts were not supported by sufficient evidence. We review the sufficiency of the evidence de novo, *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011), and view the evidence in the light most favorable to sustaining the verdicts, *Valencia*, 186 Ariz. at 495.

¶11 A directed verdict of acquittal is appropriate only "if there is no substantial evidence to support a conviction." Rule 20(a). "Substantial evidence is more than a mere scintilla and is such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Landrigan*, 176 Ariz. 1, 4 (1993) (citation omitted). We do not reweigh the evidence or determine the credibility of witnesses, *State v. Williams*, 209 Ariz. 228, 231, ¶ 6 (App. 2004), or distinguish between direct and circumstantial evidence, *State v. Stuard*, 176 Ariz. 589, 603 (1993).

¶12 There was ample evidence that Hartwell hired women to work as "models" and told them that they would be creating legal pornography, that his business earned its revenue from the sale of sexual services, and that he kept the revenue from those services. But the evidence permitted a reasonable inference that the business was not a genuine studio for the production of pornographic material—very little video content was actually produced and customers did not receive full rights to the material that they could produce. We conclude that the state presented sufficient evidence to allow a reasonable jury to find that, during the charged dates, Hartwell: intentionally acted on his own and conspired with others to control, operate, and maintain an illegal house of prostitution in violation of A.R.S. §§ 13-1003(A), -2312(A) and (B), and -3208(B); knowingly placed women in a house of prostitution, intending that they act as prostitutes in violation of § 13-3209(2); knowingly received and controlled all proceeds from employees working in his house of prostitution in violation of § 13-3204; knowingly sex trafficked women over the age of 18 with knowledge that they would engage in prostitution by deceiving them about the legality of the operation in violation of § 13-1307(A)(2); intentionally or knowingly forced S.M. to have oral sexual contact with his penis in violation of § 13-1406(A); and intentionally placed S.M. in reasonable apprehension of

imminent physical injury while she was bound or restrained in violation of §§ 13-1203(A)(2) and -1204(A)(4).

¶13            Accordingly, sufficient evidence supports the court's denial of Hartwell's Rule 20 motion and therefore also supports Hartwell's convictions.

II.      THE COURT ALLOWED HARTWELL TO ARGUE A FIRST AMENDMENT-BASED DEFENSE.

¶14            Hartwell contends the superior court erred by preventing him from presenting his First Amendment defense to the jury. We review the superior court's ruling on the admissibility of evidence and refusal to give a requested jury instruction for an abuse of discretion. *State v. Tucker*, 215 Ariz. 298, 314, ¶ 58 (2007); *State v. Wall*, 212 Ariz. 1, 3, ¶ 12 (2006).

¶15            Hartwell was not charged with any expression-related crime. And because the facts do not demonstrate the studio's purpose was to create pornographic content, we need only address the application of First Amendment principles to prostitution, not pornography.

¶16            The applicability of First Amendment protections to the facts of a case is a question for the judge, not the jury. *Dennis v. United States*, 341 U.S. 494, 513 (1951). Here, Hartwell was charged with prostitution-related crimes, and we have previously held that any communication intended to "bring about the commission of an act of prostitution" is not protected by the First Amendment. *State v. Crisp*, 175 Ariz. 281, 283 (App. 1993). At trial, Hartwell sought to argue that his conduct constituted First Amendment-protected expression. And while the superior court precluded Hartwell from explicitly referring to the First Amendment before the jury, it did allow him to present extensive testimony and argument that the charged conduct fell within the legal definition of pornography. The court also instructed the jury that "[p]ossessing, publishing, presenting, and/or producing pornography may be lawful in Arizona." Accordingly, Hartwell was not prevented from raising a First Amendment-based defense and the court did not abuse its discretion in precluding any direct reference to the First Amendment to the jury.

III.     HARTWELL FAILED TO RAISE A SUCCESSFUL UNCONSTITUTIONAL OVERBREADTH CLAIM UNDER THE FIRST AMENDMENT.

¶17            Hartwell contends that the superior court erred by denying his motion to dismiss, in which he claimed that Arizona's prostitution-

related statutes are unconstitutionally overbroad under the First Amendment. We review claims involving the application of a statute de novo. *See State v. Russo*, 219 Ariz. 223, 225, ¶ 4 (App. 2008).

**¶18**    A litigant may challenge a statute's constitutionality for overbreadth under the First Amendment even if his conduct or expression is not constitutionally protected and clearly falls within the statute's "plainly legitimate sweep." *Hill v. Colorado*, 530 U.S. 703, 731–32 (2000); *State v. Steiger*, 162 Ariz. 138, 143–44 (App. 1989). To raise a successful overbreadth claim, the challenging party must demonstrate a "realistic danger that the statute will *significantly* jeopardize recognized first amendment protections of individuals not before the court." *Steiger*, 162 Ariz. at 144 (citation omitted).

**¶19**    Under A.R.S. § 13-3211(5), "'[p]rostitution' means engaging in or agreeing or offering to engage in sexual conduct under a fee arrangement with any person for money or any other valuable consideration." As stated above, the courts have not recognized any constitutionally protected right to engage in prostitution or commercial sexual conduct, so Hartwell's conduct is within the legitimate scope of the statute. *See State v. Freitag*, 212 Ariz. 269, 271, ¶ 8 (App. 2006) (prostitution ordinance did not affect fundamental liberty). We have specifically rejected claims that prostitution statutes violate First Amendment principles. *State v. Savio*, 186 Ariz. 487, 489 (App. 1996) (prostitution ordinance does not abridge protected activity); *Crisp*, 175 Ariz. at 283 (prostitution ordinance does not abridge protected speech); *State v. Taylor*, 167 Ariz. 429, 432–34 (App. 1990) (statutory definition of prostitution did not abridge freedom of theatrical expression). And Hartwell has not met his burden of establishing a realistic danger that the state's definition of prostitution will significantly jeopardize somebody's constitutional right to create pornography. We therefore decline to analyze the hypothetical case of a prosecuted pornographer here. *See Taylor*, 167 Ariz. at 434 (leaving a first amendment overbreadth analysis "for the case, if it ever arises, where prosecutorial discretion under A.R.S. § 13-3211(5) is abused").

**¶20**    In relevant part, Hartwell was convicted of violating A.R.S. §§ 13-3204 (receiving earnings of a prostitute), -3208(B) (operating a house of prostitution), -3209(A)(2) (pandering), and -1307(A)(2) (sex trafficking). Because such statutes have already been held not to jeopardize recognized First Amendment protections, and because he otherwise failed to establish a realistic danger that the statutes would be unconstitutionally enforced, Hartwell's overbreadth argument fails. Accordingly, the court did not err by denying his motion to dismiss.

IV.     THE COURT DID NOT ERR BY DENYING HARTWELL'S
        MOTION TO SEVER THE ASSAULT-RELATED OFFENSES.

¶21         Hartwell challenges the superior court's denial of his motion to sever the assault-related offenses involving S.M. and C.S. from the prostitution-related offenses. Though Hartwell concedes that his original motion to sever was untimely, he argues his timely renewal of the motion entitles him to review for abuse of discretion. We disagree.

¶22         If the original motion to sever is not timely made, the issue is waived on appeal. *See* Rule 13.4(c); *see also State v. Laird*, 186 Ariz. 203, 206 (1996). Renewal does not, as Hartwell suggests, ameliorate a defendant's previous non-compliance with Rule 13.4(c). *See State v. Archer*, 124 Ariz. 291, 293 (App. 1979). We therefore review only for fundamental error. *See State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018).

¶23         Joinder is favored, and the defendant carries the burden of showing that a refusal to grant severance caused him prejudice. *State v. Cruz*, 137 Ariz. 541, 544 (1983). "Prejudice from a failure to sever is unlikely [i]f the evidence of one crime would have been admissible in a separate trial for the others." *State v. Johnson*, 212 Ariz. 425, 430, ¶ 11 (2006) (citation omitted).

¶24         Here, the evidence presented at trial showed that Hartwell operated a house of prostitution and, in doing so, was known to be volatile, aggressive, and acted as though he "owned" his female employees. S.M. and C.S. worked for Hartwell in the house of prostitution, and Hartwell used his role as their supervisor to commit the assault-related offenses. All of the offenses occurred during the same time period. Because of the interwoven backgrounds of the offenses, the evidence would have been cross-admissible in creating a "complete picture" of all of the offenses. *See State v. Via*, 146 Ariz. 108, 115 (1985). Hartwell has not shown joinder caused him prejudice. We find no fundamental error.

V.      REASONABLE EVIDENCE SUPPORTS THE COURT'S DENIAL OF
        HARTWELL'S MOTION FOR MISTRIAL.

¶25         Hartwell next contends that the superior court erred by denying his motion for mistrial after the state elicited testimony about an incident involving a baseball bat. He argues that the testimony was prejudicial prior-bad-act evidence barred by Ariz. R. Evid. 404(b).

¶26         We review the court's denial of a motion for mistrial for an abuse of discretion. *State v. Ferguson*, 149 Ariz. 200, 211 (1986). "A

declaration of a mistrial is the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Adamson*, 136 Ariz. 250, 262 (1983). When questions asked in cross-examination "open[ ] the door" to otherwise objectionable testimony, we find no trial error. *State v. Leyvas*, 221 Ariz. 181, 189, ¶ 25 (App. 2009) (citation omitted).

**¶27** On cross-examination, Hartwell's counsel asked witnesses whether they observed him using or threatening the use of violence. Later, the state elicited testimony from two former employees that Hartwell was a particularly difficult supervisor and they separately observed him threaten or hit an employee with a baseball bat. Although the court denied Hartwell's motion for mistrial and permitted testimony that he chased an employee with a baseball bat, the court sustained an objection and struck testimony that he hit an employee with the bat. Upon Hartwell's request, the court provided a curative instruction that the jury must disregard any statements stricken from the record.

**¶28** Hartwell's trial strategy placed his use of threats or intimidation at issue, making such testimony relevant, even if it was objectionable. *See Leyvas*, 221 Ariz. at 189, ¶ 25. We therefore defer to the superior court's assessment of the testimony that was not struck from the record, and, as to the testimony that was struck, we presume the jury followed the curative instructions. *See State v. Prince*, 204 Ariz. 156, 158, ¶ 9 (2003).

VI.  WE PRESUME THE VIDEO EVIDENCE SUPPORTED THE COURT'S DECISION TO PRECLUDE IT.

**¶29** Hartwell argues the court abused its discretion by precluding video recordings that allegedly corroborated his claim that all conduct with S.M. was consensual.

**¶30** It is the appellant's duty to see that the record is complete. *State v. Zuck*, 134 Ariz. 509, 512–13 (1982). "Where matters are not included in the record on appeal, the missing portions of the record will be presumed to support the action of the trial court." *Id.* at 513.

**¶31** The superior court allowed Hartwell to admit certain video surveillance recordings, which show S.M. without any visible signs of distress or injuries in the minutes before and after the sexual assault and aggravated assault were alleged to have occurred. Hartwell testified that the admitted video corroborated his claim that all of the conduct with S.M. was consensual. Hartwell also sought to admit video surveillance that was

recorded one week before the offenses, arguing that those recordings further depicted S.M.'s interest in sadomasochistic conduct and could be used to impeach S.M's testimony that she did not help set up the BDSM room. The superior court precluded the earlier recordings, finding that they were not relevant. Though offered by Hartwell at trial, the precluded recordings were not made part of the record on appeal.

**¶32**        Without being able to review the content of the precluded videos, we must presume that they support the court's conclusion that they were not relevant. *See id.* On this basis alone, we find that the court did not err by precluding the video. Moreover, Hartwell played recordings of S.M. from the date of the offenses and testified they corroborated his defense. This, coupled with testimony from S.M. that she expressed interest in sadomasochistic conduct before the offenses occurred, would make the additional recordings cumulative and any error would not be reversible. *See State v. Dunlap*, 187 Ariz. 441, 456–57 (App. 1996) (holding that erroneous exclusion of cumulative evidence did not require reversal).

## CONCLUSION

**¶33**        We affirm Hartwell's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA