556 P.2d 320
**STATE of Arizona, Appellee,**
v.
**Solon STRICKLAND, Jr., Appellant.**

No. 3613.

Supreme Court of Arizona,
En Banc.

Nov. 1, 1976.

**446**

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, and Lynn Hamilton, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Joel M. Glynn, Deputy Public Defender, Phoenix, for appellant.

HAYS, Justice.

The appellant, Solon Strickland, Jr., was charged with one count of grand theft in violation of 5 A.R.S. §§ 13–661, 13–662, 13–663, 13–671, 13–138, 13–139 and 13–140. Trial was had to a jury and the appellant was found guilty. He was sentenced to serve not less than three nor more than five years at the state penitentiary. We have jurisdiction of this appeal pursuant to 17A A.R.S. Supreme Court Rules, rule 47(e)(5).

On June 9, 1975, at approximately 2:00 p. m., Mrs. Merlyn Legge was in a Valley National Bank parking lot in Phoenix on her way to the bank to make a deposit of $200 in cash and some checks which were contained in a blue pouch she carried. As she was crossing the lot, she noticed three boys exit a white car. When she was within 15 to 20 feet from the three individuals, she stopped for a moment to check the pouch and observe the three boys. She then proceeded towards the bank, walking through the three boys who had divided. After passing the boys, the one who had split to the left came from behind Mrs. Legge and grabbed her with an arm

around the throat. Mrs. Legge fell, and lost the money bag, her assailant picking it up and running.

On June 13, 1975, the appellant, Strickland, was arrested. He was given his *Miranda* warnings and interrogated. He confessed the same day to the robbery of Mrs. Legge.

The following day, June 14, the appellant was placed in a line-up with five other men. Mrs. Legge twice viewed the line-up but did not identify the appellant as her assailant. It became known after trial that the witness had singled out someone other than the appellant from the line-up. Mrs. Legge had also previously failed to identify the appellant at a photo line-up.

On June 19, 1975, a preliminary hearing was held. The appellant appeared at the hearing clad in a white Maricopa County Jail T-shirt and Levis and was sitting with his attorney at defense table. The record shows that there were others dressed similar to Strickland in the courtroom who were waiting for their hearings with counsel, one of whom was also black, but they were seated behind appellant and his attorney. It was at the preliminary hearing that Mrs. Legge for the first time identified the appellant as her assailant

Following the hearing, one of the officers who was working on the case informed Mrs. Legge that the man that she identified at the hearing had previously confessed to the crime.

Immediately prior to trial, a voluntariness hearing was held at which the court held the appellant's confession to have been freely and voluntarily given without coercion and therefore admissible at trial. Additionally, a *Dessureault* hearing was conducted pursuant to *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969), wherein the proposed in-court identification of the appellant by Mrs. Legge was held to be admissible. The court found that the circumstances under which the pretrial identification of the appellant was made were not unduly suggestive. Trial followed im-

mediately and the defendant was found guilty.

Five questions are presented on appeal:

1) Was the trial court correct in finding that the pretrial identification was not unduly suggestive?

2) Was the appellant denied due process by the prosecution's denial of certain *Brady* material?

3) Was the appellant's confession voluntarily given?

4) Did certain testimony of Officer Stovall make reference to other "bad acts" thereby prejudicing appellant's case?

5) Was the court's instruction on "circumstantial evidence" error?

## PRETRIAL IDENTIFICATION

Appellant's first assignment of error is that the pretrial identification process, wherein the victim identified the appellant at the preliminary hearing, was unduly suggestive and thereby tainted her in-court identification of the appellant.

■ Preliminarily we must determine whether a pretrial identification made at a preliminary hearing falls within the ambit of the "pretrial identification" cases of *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and its progeny, and *State v. Dessureault, supra.* The state argues that this case is not controlled by the rulings of those decisions since the issue of suggestive pretrial identification is usually presented in the context of group line-ups, single man show-ups or photographic line-ups. That is, the state posits that because the pretrial identification took place at a preliminary hearing instead of the usual police line-up or show-up, the minimum constitutional requirements attendant upon such procedures are not here applicable. What the state fails to recognize, however, is that ultimately it is the in-court identification that we must be principally concerned with. If that identification is tainted by a prior identification, whether made at a suggestive police line-up or at a suggestive preliminary hearing, the end result is the same: a high likelihood of irreparable misidentification and a concurrent denial of due process of law to the defendant. *Stovall v. Denno, supra.* We hold that the pretrial preliminary hearing identification here at issue is embraced by the strictures of *Stovall* and *Dessureault.* In so holding, however, we wish to make clear that we are not hereafter proscribing identifications made for the first time at preliminary hearings. Nor are we saying that such an identification is necessarily suggestive. Rather we are merely requiring that when an identification is made at a preliminary hearing, as at any other pretrial proceeding, the identification must not be the result of circumstances so unduly suggestive as to make that identification unreliable. We now proceed to the merits of appellant's claim.

■ The circumstances under which Mrs. Legge first identified the appellant as her assailant were indeed suggestive. At the June 19 preliminary hearing the appellant wore a Maricopa County Jail T-shirt, was seated alone with counsel at the defense table and was obviously "in custody." It was apparent who Mrs. Legge would have to "identify." The suggestibility of the preliminary hearing, though, does not per se taint the subsequent in-court identification. *State v. Williams,* 113 Ariz. 14, 545 P.2d 938 (1976).

■ The test we must apply when it is alleged that the pretrial confrontation procedure was suggestive is whether, in view of the totality of circumstances, the identification was reliable. *Stovall v. Denno, supra; State v. Williams, supra.*

■ The factors to be considered in determining the likelihood of a misidentification include:

"[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the

confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers,* 409 U.S. 188, 199, 93 S. Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972) ; *see also State v. Williams, supra.*

█ In the instant case, the witness testified that she observed the appellant's face for "[a]s long as it would take an ordinary pace walking four or five steps." The witness' observation of the three took place *before* the incident, at which point she had no real interest in taking note of the individual characteristics of the boys. She could not see her attacker during or after the incident, having lost her glasses in the struggle. She testified that she was "certain" of her identification at the preliminary hearing; however, her first "confrontation" with the appellant resulted in her failure to identify the appellant. Finally, the first time she did identify the appellant was 10 days after the crime. Although a 10-day span is not by any means too long a period between the crime and the confrontation for one to make a correct identification, in the instant case, where the witness saw her attacker for such a brief period, at a point in time where she had no discernible interest in remembering what he looked like, we think the 10-day span may well have vitiated the reliability of her identification. Weighing all these considerations, we think that there was a "very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968). Moreover, the fact that Mrs. Legge was unable to identify the appellant at either of two "live" line-ups or at a photo line-up and that she, in fact, singled out a different individual altogether at the "live" line-up, leads us to believe that the witness' identification at the preliminary hearing was the product of the suggestibility of the circumstances and not based on an independent recollection of the appellant from the scene of the crime. All things considered, we find that the identification was not reliable.

Once the witness made her "positive" identification at the preliminary hearing and was reinforced in that identification by the officer's statement to her that the appellant had confessed, it is obvious that she would stick to that identification at the trial. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). We hold that the in-court identification was impermissibly tainted by the prior identification of appellant.

"If it can be determined from the record that the in-court identification was tainted and that it does not appear harmless beyond a reasonable doubt, the conviction will be reversed." *State v. Dessureault,* 104 Ariz. at 384, 453 P.2d at 955 (1969).

Here, we cannot say beyond a reasonable doubt that the witness' in-court "positive" identification of the appellant was harmless and did not contribute to the verdict. Accordingly, we reverse and remand for a new trial.

Since we are reversing and remanding, we need not consider appellant's second, fourth and fifth assignments of error. We do, however, feel it incumbent upon this court to consider the appellant's third assignment of error which deals with whether the appellant's confession was voluntarily given in order to expedite appellate review of this issue and to provide guidance for the lower court on re-trial.

## VOLUNTARINESS OF CONFESSION

█ The appellant argues that his confession was not voluntary but rather was obtained by a promise of immunity in contravention to *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

The circumstances giving rise to this claim are as follows. At the time of his confession, appellant had been charged with the robbery of Mrs. Legge. Additionally, the police suspected that the appellant was involved in five or six other robberies, in two of which they were some-

what certain of the defendant's involvement because of surveillance photographs in which the appellant appeared. The police however did not have any concrete evidence to connect the appellant to the other robberies of which he was suspected.

On the day on which the appellant was arrested, he was interrogated by several different police officers. At 4:00 p. m. he was advised of his rights and questioned for a short period of time by Officer Patterson. At about 6:00 p. m. an Officer Stovall questioned the appellant. Upon being questioned about the robbery of Mrs. Legge, the appellant denied any knowledge of the crime. Later during the interrogation, Officer Stovall asked the appellant for information concerning the other crimes which the appellant was suspected of being involved in but with which the police had no evidence to connect the appellant. Specifically, Officer Stovall asked for times, dates and locations, and he asked the appellant to verify that he was implicated so that the officer could "clear paper" on those other crimes.

Additionally, Officer Stovall told the appellant that if he did give information on those other unsolved crimes, he would not subsequently be charged with those other crimes. The appellant nevertheless did not divulge any information in regard to those unrelated crimes.

At approximately 6:30 p. m., an Officer Davis questioned the appellant. It was at that point that the appellant confessed to the robbery of Mrs. Legge.

It is the appellant's contention that Officer Stovall's request to help him "clear paper" by giving him information about the unsolved crimes, coupled with his promise not to prosecute the appellant on those crimes, constituted a promise of immunity which induced the appellant to confess to the present charge. We cannot agree.

*Malloy v. Hogan, supra,* requires that in order for a confession to be admissible it must be free and voluntary and not extracted by promises, however slight. We do not think, however, that the appellant's confession was the result of a promise of immunity. Officer Stovall told the appellant that if he would give him information about some other unrelated crimes of which he was suspected, he would not be charged with *those* crimes. Obviously, Officer Stovall was anxious to determine who was involved in those other cases in order to possibly dispose of them from his workload. If the appellant confessed or gave information regarding those crimes, the officer would at least be a step closer to closing the case. In return, the appellant would not be prosecuted for *those* crimes.

The appellant was *not* told that if he confessed to *this* particular crime involving Mrs. Legge that the other possible charges would be dropped. In short, the quid pro quo did not involve a confession of the crime involving Mrs. Legge. Such a confession was not part of the officer's offer and could gain the appellant no benefit. We find that the discussion concerning the other unrelated crimes could in no way have been influential to the appellant in confessing.

The trial court held a voluntariness hearing immediately prior to trial in which the appellant's confession was deemed to have been freely and voluntarily given. The trial court's determination of the admissibility of a confession will not be disturbed on appeal absent "clear and manifest error." *State v. Edwards,* 111 Ariz. 357, 529 P.2d 1174 (1975). The record in this case clearly supports the trial judge's ruling and we find no error in admitting the appellant's confession at trial.

Judgment and sentence reversed and remanded for new trial.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.