578 P.2d 1032

**STATE of Arizona, Appellee,**

v.

**Leo Anthony NIETO, Appellant.**

**1 CA–CR 2662.**

Court of Appeals of Arizona,
Division 1,
Department A.

April 25, 1978.

Bruce E. Babbitt, former Atty. Gen., by William J. Schafer, III, Chief Counsel, Crim. Div., and Cleon M. Duke, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Joel M. Glynn, Deputy Public Defender, and Brice E. Buehler, Phoenix, for appellant.

## OPINION

HAIRE, Presiding Judge.

Appellant was charged with the crime of robbery, with an allegation that he had been previously convicted of obtaining money or property by confidence game. A jury returned a verdict of guilty on the robbery charge, and appellant admitted his prior conviction to the court. He was sentenced to serve not less than ten nor more than fifteen years in the Arizona State Prison. Appellant challenges his robbery conviction by asserting the unreliability of the victim's pretrial identification and the insufficiency of the evidence against him. He also contends the trial court erred in accepting his admission to the prior conviction.

On July 15, 1976, Patrick Moore was working as a clerk in a "7–11" convenience market in West Phoenix. At approximately 3:00 a. m., Mr. Moore was stocking sandwiches in a refrigerated case located in the rear of the store. Two men entered the store, and Mr. Moore glanced up from his duties, observing the men for a period of five to ten seconds. One of the men, whom Mr. Moore described as having light hair and thin build, began playing a pinball machine. The other man began walking about the store. The clerk described him as being about 5'–11", 220 pounds, with black hair parted on the side, full moustache, and a five to six day growth of beard. He was wearing a Levi vest and a white T-shirt

underneath it. The two men had been in the store about three minutes when the latter individual walked right past the clerk, who was still stocking sandwiches. Mr. Moore was then hit on the head from behind. He fell down, dazed for a few seconds. The man who hit him told him to lie face down, count to 100, and not move. The clerk then heard both cash registers being opened, but did not again observe either of the two men. Mr. Moore finished counting to 100, by which time the men had left, and then he called the police. Taken in the robbery were cash from the registers, and a six-pack of Coors beer. A large "Pine-Sol" bottle was found in the tray from which Mr. Moore had been transferring sandwiches into the sandwich case. Several fingerprints on this bottle matched those of appellant.

The clerk, Mr. Moore, assured police that he could identify the man who hit him over the head. However, six days later, Mr. Moore was shown a set of five photographs which contained a picture of appellant, and Mr. Moore stated that "the big guy" (the man who struck him) was not in the lineup. On August 3, 1976, appellant was brought before a justice of the peace for a preliminary hearing. This was Mr. Moore's first opportunity for a live confrontation with appellant, and Mr. Moore made a tentative identification at that time.

"Q. [By the Deputy County Attorney] Okay. Now, is there anyone in the courtroom today that you recognize from that evening?

"A. [Mr. Moore] Yes, sir, the man sitting over there. He [the defendant] looks like him, but I cannot be sure."

Prior to trial, appellant's counsel moved to suppress any in-court identification of appellant by Mr. Moore. It was contended that the circumstances of the initial preliminary hearing identification were so unduly suggestive that a subsequent in-court identification would be irreparably tainted. The court denied the motion and permitted Mr. Moore to give the same tentative identification of appellant at trial. Appellant claims error.

## RELIABILITY OF PRETRIAL IDENTIFICATION

Appellant argues that he was denied due process of law when the trial court permitted the victim to identify him in court. It is appellant's contention that the pretrial identification at the preliminary hearing was suggestive and conducive of irreparable mistaken identification because when asked to identify his attacker, the victim was presented with only one real choice. *See State v. Myers,* 117 Ariz. 79, 570 P.2d 1252 (1977).

■ The criminal defendant's due process rights include the right to a fair identification procedure. *State v. Myers, supra.* Reliability is the key to determining the admissibility of identification testimony. *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977); *State v. Myers, supra.* Courts will consider the totality of the circumstances surrounding a challenged identification to determine whether there is a very substantial likelihood that the defendant has been mistakenly identified. *See State v. Myers.* The United States Supreme Court, in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) set forth some factors (not exclusive) which are helpful in making the analysis. These include:

"the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." 409 U.S. at 199, 93 S.Ct. at 382, 34 L.Ed.2d at 411

"Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Manson v. Brathwaite,* 432 U.S. at 114, 97 S.Ct. at 2253, 53 L.Ed.2d at 154.

■ Usually, but not necessarily, it is somewhat suggestive to ask a witness to make his first identification of a defendant during a court hearing. *See State v. Strickland,* 113 Ariz. 445, 556 P.2d 320 (1976); *State v. Myers, supra.* We agree

with appellant that there were suggestive influences in this case. The appellant was seated at the defense table, with counsel, and answered to the call of his name at the beginning of the preliminary hearing. However, the corrupting effect of this identification was substantially less than the preliminary hearing identification made in *State v. Strickland, supra.* There, unlike appellant, the defendant was wearing prison clothes at the hearing. Also, in *Strickland* it was more likely that the witness' identification of the defendant at trial would be tainted by defects in the prior identification, because after the witness had identified the defendant at the preliminary hearing, a police officer informed her that the defendant had confessed to the crime.

Having found some significant suggestive influences in the identification procedure, we must further examine the totality of the circumstances to determine whether the trial court erred in considering this identification reliable. *See State v. Henderson,* 116 Ariz. 310, 569 P.2d 252 (Ct.App.1977). Concededly, the *Neil v. Biggers* factors do not lend great reliability to the identification. Mr. Moore viewed the robbers for at most five to ten seconds. His degree of attention was not particularly great, although it seems to surpass that of the witness in *Strickland, supra,* who had no interest at all in her assailant prior to the time of the crime. Mr. Moore's prior description of his assailant closely matched appellant with the exception of a marked disparity in height. Mr. Moore described his assailant as 5'–11", whereas appellant stood only 5'–4". The victim attempted to explain this disparity by the fact that when his assailant passed by, the victim was bent over transferring sandwiches from the tray to the case.

■ Appellant also stresses the fact that Mr. Moore was unable to pick appellant's picture out of a photo lineup only six days after the crime. It must be remembered, however, that the assailant was wearing a five to six day growth of beard, which would have made identification more difficult. Also, there is testimony that the pictures shown to Mr. Moore were black and white photographs of very similar individuals. Apparently, Mr. Moore's view of appel-

lant at the preliminary hearing was his first opportunity for a live confrontation. In *Strickland,* by contrast, the witness had failed to identify the defendant at a photo lineup and had identified the *wrong* person after viewing a live lineup which included the defendant in that case. When possible, a previous inability to identify the defendant should go to the credibility and not to the admissibility of a witness' subsequent in-court identification. *State v. Myers, supra.*

Mr. Moore's level of certainty in identifying appellant was not high. On the other hand, he was quite candid in admitting that he could not be sure. Ordinarily, a jury is capable of assessing the credibility of a witness and the weight to be given to testimony constituting a less-than-positive identification. *See, e. g., State v. Dutton,* 83 Ariz. 193, 318 P.2d 667 (1957).

Approximately 19 days elapsed between the commission of the crime and Mr. Moore's identification of appellant at the preliminary hearing. This period of time is neither especially long nor short. It is not a positive factor, but we do not view it as strongly negative, either.

The trial court determined that the identification procedure complied with the requirements of due process. The fairness and reliability of a challenged identification is a matter the trial court must decide, and an appellate court will not reverse the trial court's determination in the absence of clear and manifest error. *E. g., State v. Myers, supra.* Viewing the totality of the circumstances, we can find no error in the trial court's denial of appellant's motion to suppress the in-court identification.

## SUFFICIENCY OF THE EVIDENCE

■ Appellant contends that the jury's verdict of guilty is not supported by substantial evidence. We have found no error in the admission of the victim's identification of appellant, and we have previously indicated that appellant's fingerprints were on the Pine-Sol bottle found near the sandwich case. One other significant bit of evidence was the testimony of Richard Ma-

lacheson. Mr. Malacheson was appellant's friend, and a reluctant witness. Nevertheless, he testified that he was present during the latter part of July 1976 when appellant was bragging to others about having committed a robbery. Appellant seeks to minimize the force of the above evidence, but we are convinced that there is substantial evidence supporting the jury's verdict.

## ADMISSION OF PRIOR CONVICTION

Appellant contends that his admission of a prior conviction for obtaining money or property by confidence game must be set aside and his sentence in this case vacated because the trial court did not follow the requirements of Rule 17.6, Rules of Criminal Procedure, 17 A.R.S., when it accepted appellant's admission. Unless the defendant admits his prior conviction while testifying on the stand, Rule 17.6 requires the trial court to follow the procedures of Rule 17 (relating to guilty pleas) before accepting the defendant's admission. Particularly applicable to the present case is Rule 17.2:

> "Rule 17.2 Duty of court to advise defendant of his rights and of the consequences of pleading guilty or no contest

> "Before accepting a plea of guilty or no contest, the court shall address the defendant personally in open court, informing him of and determining that he understands the following:

> "a. The nature of the charge to which the plea is offered;

> "b. The nature and range of possible sentence for the offense to which the plea is offered, including any special conditions regarding sentence, parole, or commutation imposed by statute;

> "c. The constitutional rights which he foregoes by pleading guilty or no contest, including his right to counsel if he is not represented by counsel; and

> "d. His right to plead not guilty."

When accepting appellant's admission of the prior conviction, the trial court imparted the following information:

> "THE COURT: Mr. Nieto, will you come up here just a moment, please?

> "Mr. Nieto, the State has charged that on or about November 16, 1970, you were convicted here in Maricopa County of the crime of obtaining money or property by confidence game in Cause Number 63836. Now, in a minute I am going to ask you whether you admit or deny that. Before I ask you that, I want to tell you that if you deny it, and, of course, you have a right to deny it, then we will bring the jury back in, and they will hear—the State will have to prove that you were convicted of it and have to bring in satisfactory evidence to establish that.

> "Do you admit or deny that charge?

> "MR. NIETO: I admit it."

Clearly, there has not been full compliance with Rules 17.6 and 17.2. The question we must decide is whether the trial court's error is reversible.

The state argues that if the trial court erred in not advising appellant of the possible range of sentence and the constitutional rights he was waiving, it was only a violation of the rule, and not a violation of the Arizona or United States constitutions. The state points out that before the 1975 amendment of Rule 17.6, the court had to follow the prescriptions of Rule 17.2 only where the prior conviction was an element of the crime charged. Thus, since appellant's prior conviction was not an element of the crime of robbery, he would not have been entitled to Rule 17.2 information prior to the amendment of Rule 17.6. The state then observes that in two cases, *State v. Gholson,* 112 Ariz. 545, 544 P.2d 654 (1976) and *State v. Allen,* 111 Ariz. 125, 524 P.2d 502 (1974), the Arizona Supreme Court failed to find any constitutional infirmity in the old rule. These cases, however, did not consider whether *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) and its progeny require, as a matter of constitutional law, that one who admits a prior conviction must be provided the same information as one who pleads guilty to a new crime. That issue will remain unresolved in Arizona, at least for the time being, for we need not decide it here.

*Boykin, supra,* requires that the defendant be aware of three constitutional rights before his guilty plea can be considered voluntary: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination. *State v. Tiznado,* 112 Ariz. 156, 540 P.2d 122 (1975); *State v. Miller,* 110 Ariz. 304, 518 P.2d 127 (1974). We find no reversible error in the court's advice to appellant regarding his constitutional rights under *Boykin* and Rule 17.2(c). Appellant was clearly informed of his right to a jury trial on the issue of his prior conviction. By informing appellant that the state would have to present evidence to prove a prior conviction, the court conveyed the essence of appellant's confrontation rights.[1] The trial court also informed appellant that he had the right to deny the allegation of a prior conviction. Certainly, this is a part of appellant's self-incrimination rights, but there is some question whether the court's admonition delineated the full scope of appellant's privilege against self-incrimination. *See State v. Munoz,* 25 Ariz.App. 350, 543 P.2d 471 (1975). However, if the record reveals that the defendant in fact was aware of his rights, a failure to comply with Rule 17.2(c) will be considered technical, non-reversible error. *See, State v. Tiznado, supra.* In the context of this case, we find that the appellant must have known of his privilege against self-incrimination. Appellant had gone through a jury trial on the robbery charge and had not taken the stand to testify in his own behalf. He was present during the voir dire of the jury panel when the court addressed the prospective jurors in this way:

"The defendant does not have to prove he is not guilty. He does not even have to be a witness if he does not want to be. If he does not take the stand and testify that cannot be held against him. The County Attorney cannot even say anything about that to the jury. I would instruct the jury if Mr. Nieto did not testify, that they must not hold it against

him. They must not even talk about that in deciding the case."

Appellant was present when his attorney, in his opening statement, told the jury:

"The first question you may ask is: What will the defendant Leo Nieto testify to? The judge has already told you that the defendant need not testify and that you should not take this against him."

And appellant was in court to hear the judge's instructions to the jury at the conclusion of the trial:

"The State must prove beyond a reasonable doubt that he is guilty. The State must prove the charge against the defendant with evidence that the State itself gathers; therefore, the defendant is not required to testify. The decision of whether to testify is left to the defendant acting with the advice of his attorney. You must not hold it against the defendant because he did not testify."

Appellant was clearly advised by the court that if he denied the prior conviction, there would be another, similar, trial on that issue. Under the circumstances, we find it inconceivable that appellant was ignorant of his privilege against self-incrimination.

The violation of Rule 17.2(b) is inescapable, however, since the trial court failed to inform appellant of the nature and range of the possible sentence for robbery once appellant admitted a prior felony conviction. The penalty for robbery ranges from five years to life. A.R.S. § 13–643. If a person has been previously convicted of a crime punishable by imprisonment in the state prison, he is faced with a minimum prison sentence of ten years upon conviction of robbery. A.R.S. § 13–1649A(1).

■ The state contends that appellant suffered no prejudice from the trial court's failure to inform him of the range of sentence following an admission of a prior conviction, since the sentence actually imposed (from ten to fifteen years) could have been

1. We observe that, unlike the trial on the main charge, the trial of the prior conviction will not ordinarily involve a confrontation with live witnesses. *See People v. Lizarraga,* 43 Cal.App.3d 815, 118 Cal.Rptr. 208 (1974). Normally, the state will introduce documents to establish the prior conviction.

given to him even without proof of a prior conviction. If there are no constitutional infirmities in the guilty plea proceedings,[2] the general rule applicable to violations of Rule 17.2(b) is this:

"Violations of the rule do not necessarily require the plea to be vacated. The appellate court should examine the sentence actually imposed. If the sentence contains any provision that the defendant was not aware of, that affects the manner in which the sentence or date of parole is computed, either the guilty plea should be vacated or the case remanded to determine if the defendant was actually aware of the provision absent from the record." *State v. Ellis,* 117 Ariz. 329, 572 P.2d 791, 795 (1977).

However, we are dealing here with an allegation of a prior conviction, which, by its very nature, is designed to increase the punishment imposed upon recidivist criminals. Because appellant received a minimum sentence of ten years (the minimum allowable under the recidivist provisions of A.R.S. § 13–1649A(1)), we are unable to say that the increased punishment of A.R.S. § 13–1649A(1) was not an operative part of the sentence actually imposed upon appellant. The rule applicable here is set forth in *State v. Williamson,* 104 Ariz. 9, 448 P.2d 65 (1968). In *Williamson,* the state made an identical argument to sustain the sentence despite a violation of the former rule governing admissions of prior convictions. The Supreme Court refused to uphold the sentence because it was unable to determine what effect the improper proceedings relating to a prior conviction had upon the sentence received by the defendant.

▉ Appellant has made no claim that the allegation of a prior conviction was untrue, nor has he contended that he was unaware of the potentially greater punishment that could result from an admission of a prior conviction. Nevertheless, since we are unable to determine from the record whether appellant understood the effect a prior conviction would have upon his possible sentence for robbery, we must reluctantly remand this case to the trial court for a determination of whether appellant was aware of this information. If appellant understood this, the trial court's failure to comply with Rule 17.2(b) can be considered technical error and the sentence may stand. *See State v. Rios,* 113 Ariz. 30, 545 P.2d 954 (1976).

Appellant's conviction of robbery is affirmed; the case is remanded to the superior court for an evidentiary hearing relating to appellant's admission of the prior conviction. The trial court shall hold an evidentiary hearing within 30 days after the issuance of the mandate in this matter. If, after hearing, the court finds that appellant was not aware of the possible effect upon sentencing which his admission of the prior conviction would have, the admission of the prior conviction and the sentence must be set aside. The trial court should then proceed in accordance with the provisions of Rule 17 as required by Rule 17.6. If the court finds that appellant was aware of the possible effect which his admission of the prior conviction might have upon the sentence, the court shall make findings of fact and certify them to this Court together with a transcript of the evidentiary hearing.

FROEB, C. J., Division 1, and NELSON, J., concur.

---

2. Because of our disposition of this case, we need not decide whether, as a matter of constitutional law, the defendant must be aware of the Rule 17.2 sentencing information before the court can accept an admission of a prior conviction.