IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

THE STATE OF ARIZONA,                    )
                                         )
                        Appellee,        )        2 CA-CR 2011-0169
                                         )        DEPARTMENT A
        v.                               )
                                         )        O P I N I O N
NELSON E. NOTTINGHAM,                    )
                                         )
                        Appellant.       )
_____  )


APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20103680001

Honorable Christopher C. Browning, Judge

REVERSED AND REMANDED

---

Thomas C. Horne, Arizona Attorney General
  By Kent E. Cattani, Joseph T. Maziarz,
    and Joseph L. Parkhurst                                      Tucson
                                                    Attorneys for Appellee


Lori J. Lefferts, Pima County Public Defender
  By Frank P. Leto                                               Tucson
                                                    Attorneys for Appellant

---

E C K E R S T R O M, Presiding Judge.

¶1     This case involves a series of convenience store robberies. Following a retrial, appellant Nelson Nottingham was convicted of one count of robbery and two counts of armed robbery. He was sentenced to a combination of consecutive and concurrent prison terms totaling 31.5 years. On appeal, Nottingham maintains the trial court violated his right to due process by permitting the store clerks to identify him during trial as the perpetrator, even though each had failed to do so when presented with a non-suggestive photo lineup near the time of the respective incidents. Although we conclude the court did not err in allowing the in-court identifications, we find it erred in failing to instruct the jury on the reliability of such identification testimony. Because we cannot conclude the error was harmless, we reverse Nottingham's convictions and remand the case for a new trial.

## Factual and Procedural Background

¶2     We view the facts in the light most favorable to sustaining the verdicts. *State v. Powers*, 200 Ariz. 123, ¶ 2, 23 P.3d 668, 669 (App.), *approved*, 200 Ariz. 363, 26 P.3d 1134 (2001). Within a one-week period in the summer of 2010, three separate Tucson convenience stores were robbed. The three store clerks who witnessed the robberies were unable to identify Nottingham from pretrial photographic lineups shown to them within several weeks of the respective offenses.[1] In fact, two of the clerks identified other persons as most closely resembling the perpetrator. Each clerk also was shown surveillance videos taken from the stores at the time of the robberies. Over

_____

[1]Two of the clerks were shown the lineup within three weeks of the offenses, but one clerk viewed the lineup six weeks after the offense.

Nottingham's objection, the clerks were allowed to identify him in court at his first trial. In a case that focused substantially on the reliability of those identifications, the jury could not reach a verdict.

¶3        Before his second trial, Nottingham moved to suppress any pretrial and in-court identification based on *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969), the Due Process Clause of the United States Constitution, and Rule 403, Ariz. R. Evid., contending "the show-up in the original trial was unduly suggestive." The trial court denied the motion, ruling that *Dessureault*'s procedural protections applied only to pretrial identifications and not those that occur at trial. The court also found that, in any event, the witnesses' identification of Nottingham at the first trial "were not the product of any unduly suggestive circumstances" because the witnesses had been vigorously cross-examined by counsel and their testimony had been based on their independent recollection of events. Although Nottingham had requested a jury instruction that specified the factors the jury should consider when assessing the reliability of eyewitness identification testimony, the court did not give the instruction. On retrial, each clerk identified Nottingham in court as the one who had committed the robbery. Nottingham was convicted and sentenced as set forth above, and this timely appeal followed.

**Discussion**

¶4        Nottingham argues the "circumstances surrounding the in-court trial identifications of [him] approximately seven to eight months after the offenses by three store clerks who failed to identify him in a photo lineup . . . create a substantial likelihood of misidentification." Specifically, he contends the trial court committed reversible error

by (1) failing to hold a *Dessureault* hearing before the second trial, (2) admitting the in-court identifications by the store clerks, and (3) refusing his request for a *Dessureault* instruction. We review a trial court's ruling on an in-court identification for an abuse of discretion. *State v. Leyvas*, 221 Ariz. 181, ¶ 9, 211 P.3d 1165, 1168 (App. 2009). "But we review de novo the question whether a common law procedural rule with constitutional underpinnings, such as that set forth in *Dessureault*, applies to a particular factual scenario." *Leyvas*, 221 Ariz. 181, ¶ 9, 211 P.3d at 1168.

¶5 The Due Process Clause of the Fourteenth Amendment requires that pretrial identification procedures be conducted by police in a manner that is "fundamentally fair and secures the suspect's right to a fair trial." *State v. Lehr*, 201 Ariz. 509, ¶ 46, 38 P.3d 1172, 1183 (2002), *citing Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). Accordingly, Arizona courts have held that the presentation of identification evidence arising from suggestive procedures that create "a substantial likelihood of misidentification" violates a defendant's right to due process. *Id.*

¶6 In *Dessureault*, our supreme court established a process for challenging pretrial identification procedures that are "significantly suggestive and as such materially increase[] the dangers inherent in eye witness identification." 104 Ariz. at 383, 453 P.2d at 954; *accord Leyvas*, 221 Ariz. 181, ¶ 12, 211 P.3d at 1169. That process entitles a defendant to (1) a hearing to challenge a proposed in-court identification on the grounds that the underlying pretrial identification process was unduly suggestive, (2) preclusion of any in-court identification if the trial court concludes both that the pretrial identification process was unduly suggestive and would taint any subsequent in-court identification of

4

the suspect, and (3) a cautionary jury instruction if the court concludes the pretrial identification process was suggestive but not sufficiently so to justify preclusion in light of the circumstances of the case. *Leyvas*, 221 Ariz. 181, ¶ 12, 211 P.3d at 1169.[2]

¶7          In *Dessureault*, as in most cases presenting pretrial identification issues, the identification process had been arranged by the police. 104 Ariz. at 382, 453 P.2d at 953.

---

[2]The so-called *Dessureault* instruction requested in this case was taken from Revised Arizona Jury Instructions (RAJI) 39, and provides as follows:

> The State must prove beyond a reasonable doubt that the in-court identification of the defendant at this trial is reliable. In determining whether this in-court identification is reliable you may consider such things as:
>
> 1. The witness' opportunity to view at the time of the crime;
>
> 2. The witness' degree of attention at the time of the crime;
>
> 3. The accuracy of any descriptions the witness made prior to the pretrial identification;
>
> 4. The witness' level of certainty at the time of the pretrial identification;
>
> 5. The time between the crime and the pretrial identification;
>
> 6. Any other factor that affects the reliability of the identification.
>
> If you determine that the in-court identification of the defendant at this trial is not reliable, then you must not consider that identification.

*See* State Bar of Arizona, *Revised Arizona Jury Instructions (Criminal)* Std. 39 (3d ed. 2008).

Here, however, we address whether a defendant is entitled to the same procedural protections when the pretrial identification process occurs in other court proceedings and is not arranged by the police. Nottingham maintains that the in-court identifications of him in his first trial were conducted under unduly suggestive circumstances because (1) the eyewitnesses had been unable to select him from a non-suggestive photo lineup and (2) his presence as the lone non-attorney at the defense table made it clear to the witnesses that he was the person the state suspected of committing the offenses. Nottingham contends that these suggestive in-court identifications, which occurred at the first trial, tainted the same identifications conducted at the second trial. And, contrary to the trial court's ruling, he argues there is no meaningful analytical distinction between suggestive procedures conducted by police officers in advance of court proceedings and those conducted by prosecutors during court proceedings in advance of trial.

¶8 His argument finds support in our state's jurisprudence. In *State v. Strickland*, our supreme court applied a *Dessureault* analysis to a witness identification made for the first time at a preliminary hearing, granting the defendant a new trial because the circumstances were so unduly suggestive that they created a "'substantial likelihood of irreparable misidentification'" in any subsequent trial. 113 Ariz. 445, 448, 556 P.2d 320, 323 (1976), *quoting Simmons v. United States*, 390 U.S. 377, 384 (1968). Thus, our supreme court has squarely held that suggestive identification procedures occurring as part of formal court proceedings, like those arranged by police, may trigger the procedural protections set forth in *Dessureault*. *Strickland*, 113 Ariz. at 447, 556 P.2d at 322. In so holding, the *Strickland* court reasoned, "If [an in-court] identification

6

is tainted by a prior identification, whether made at a suggestive police line-up or at a suggestive preliminary hearing, the end result is the same: a high likelihood of irreparable misidentification and a concurrent denial of due process of law to the defendant." *Id.*

**¶9** However, the United States Supreme Court more recently has addressed the question whether "the Due Process Clause requires a trial judge to conduct a preliminary assessment of the reliability of an eyewitness identification made under suggestive circumstances not arranged by the police." *Perry v. New Hampshire*, ___U.S. ___, ___, 132 S. Ct. 716, 723 (2012). There, the Court observed that the "primary aim of excluding identification evidence obtained under unnecessarily suggestive circumstances . . . is to deter law enforcement use of improper lineups, showups, and photo arrays in the first place." *Id*. at ___, 132 S. Ct. at 726. Thus, the "deterrence rationale" does not apply when "the police [have] engaged in no improper conduct." *Id.* The Court held that "[w]hen no improper law enforcement activity is involved, . . . it suffices to test reliability through the rights and opportunities generally designed for that purpose," such as "vigorous cross-examination" at trial. *Id.* at ___, 132 S. Ct. at 721.

**¶10** Our state supreme court's contrary analysis in *Strickland* was anchored exclusively in its understanding of the requirements of the Due Process Clause of the United States Constitution. *See* 113 Ariz. at 447, 448, 556 P.2d at 322, 323. Because the United States Supreme Court is the final arbiter of those requirements, we must conclude *Strickland* has been overtaken by *Perry* to the extent the former case found that subsequent in-court identifications could be precluded based on suggestive in-court

7

identification procedures that did not involve "improper state conduct." *Perry*, ___ U.S. at ___, 132 S. Ct. at 728. The pretrial identification here occurred during criminal trial proceedings, was subject therefore to all the protections therein, and was permitted and supervised by a neutral, detached arbiter, the trial judge. Under such circumstances, the core rationale stated in *Perry* for precluding certain in-court identifications—that doing so serves the salutary function of deterring law enforcement misconduct—has no application. *Cf. United States v. Leon*, 468 U.S. 897, 916-17 (1984) (deterrence rationale inapplicable to neutral judges and magistrates). Accordingly, under *Perry*, the trial court neither erred when it declined to hold a pretrial *Dessureault* hearing in this case nor when it admitted the subsequent in-court identifications.

¶11        The Court's reasoning in *Perry*, however, prevents us from similarly affirming the trial court's denial of Nottingham's request for a cautionary instruction. There, the Court declined to impose a prescreening requirement for certain in-court identification evidence precisely because it trusted the "safeguards built into our adversary system" to test the reliability of such evidence at trial. *Perry*, ___ U.S. at ___, 132 S. Ct. at 728. In so reasoning, the Court identified several protections providing due process to a defendant who challenges the reliability of in-court identifications occurring after suggestive pretrial identification procedures: among them, the Sixth Amendment right to confront the eyewitness; the defendant's concomitant right to effective cross-examination of the eyewitness; and, important here, the use of "[e]yewitness-specific jury

8

instructions, which . . . warn the jury to take care in appraising identification evidence." *Id.* at ___, 132 S. Ct. at 728-29.[3]

¶12     By its reasoning, the Court clearly assumed that trial courts would provide cautionary instructions, alerting the jury to the dangers of identification evidence secured through a suggestive procedure, even when the suggestive pretrial identification was not due to "improper state conduct" and therefore was not subject to any judicial pretrial screening to comply with due process. *Id.* at ___, 132 S. Ct. at 728. This approach, which reduces the trial court's role in assessing the reliability of witness testimony and elevates the jury's role, conforms to the Court's express "recognition that the jury, not the judge, traditionally determines the reliability of evidence." *Id.* And, in observing that such instructions were one of the primary protections defendants enjoyed under the Due Process Clause in challenging such evidence at trial, the Court's reasoning implies that a trial court would err in declining to provide an instruction when presented with evidence of any suggestive pretrial identification.

¶13     Accordingly, we conclude *Perry* has modified Arizona law to the extent our courts had conditioned a defendant's entitlement to a cautionary identification instruction on a trial court's formal finding that a pretrial identification procedure was "unduly

---

[3]In so stating, the Court listed our own RAJI 39—the instruction Nottingham requested be given in this case—as an example of the type of cautionary instruction that acts as an important guarantor of due process in the trial presentation of identification evidence. *See Perry*, ___U.S. at ___ n.7, 132 S. Ct. at 729 n.7.

suggestive."[4]  Instead, *Perry* suggests that, at minimum, a cautionary jury instruction is required when a defendant has presented evidence that a pretrial identification has been made under suggestive circumstances that might cause the later "eyewitness testimony [to be] of questionable reliability."  ___U.S. at ___, 132 S. Ct. at 728.

**¶14**        We now turn to the question of whether Nottingham was entitled to such an instruction here.  In Arizona, a defendant generally is entitled to a jury instruction "on any theory reasonably supported by the evidence."  *State v. Axley*, 132 Ariz. 383, 392, 646 P.2d 268, 277 (1982); *accord State v. Rodriguez*, 192 Ariz. 58, ¶ 16, 961 P.2d 1006, 1009 (1998); *cf. State v. Linden*, 136 Ariz. 129, 137-38, 664 P.2d 673, 681-82 (App. 1983) (even if court denies motion to suppress statements on voluntariness grounds, defendant entitled to voluntariness instruction "if the evidence has raised a question for the jury").[5]  In making this assessment, a court must view the evidence in the light most

---

[4]Before *Perry*, this court had long held that defendants in Arizona were not entitled to cautionary instructions regarding the reliability of identification evidence in the absence of a specific finding by the trial court during a pretrial hearing that a pretrial identification procedure had been unduly suggestive.  *See, e.g.*, *State v. Machado*, 224 Ariz. 343, ¶ 63, 230 P.3d 1158, 1178 (App. 2010), *aff'd*, 226 Ariz. 281, 246 P.3d 632 (2011); *State v. Osorio*, 187 Ariz. 579, 582, 931 P.2d 1089, 1092 (App. 1996), *review dismissed*, 188 Ariz. 375, 936 P.2d 1269 (1997); *State v. Harris*, 23 Ariz. App. 358, 360, 533 P.2d 569, 571 (1975).  Our supreme court, however, had never expressly adopted this interpretation.  *See State v. Stow*, 109 Ariz. 282, 284, 508 P.2d 1144, 1146 (1973) (concluding, without analysis, that defendant entitled to identity instruction "if requested" in case where *Dessureault* hearing held but not specifying whether trial court made finding of undue suggestiveness).

[5]A trial court is not required to give a proposed instruction when its substance is covered adequately by other instructions.  *Rodriguez*, 192 Ariz. 58, ¶ 16, 961 P.2d at 1009.  However, the substance of the *Dessureault* instruction sets forth specific factors a jury should consider in assessing the reliability of identification evidence, and none of those factors are covered by general instructions on the burden of proof and the jury's

10

favorable to the proponent of the jury instruction. *See State v. King*, 225 Ariz. 87, ¶ 13, 235 P.3d 240, 243 (2010); *Rodriguez*, 192 Ariz. 58, ¶ 20, 961 P.2d at 1010. "If there is evidence tending to establish the underlying theory of the instruction, the instruction must be given and any conflict between that and other evidence must be resolved by the jury." *Starr v. Campos*, 134 Ariz. 254, 255, 655 P.2d 794, 795 (App. 1982). Applying those standards in light of *Perry*'s requirements, we conclude that defendants are entitled to a cautionary instruction when they have shown suggestive circumstances attendant to a pretrial identification that tend to bring the reliability of the identification testimony into question. *See State v. Osorio*, 187 Ariz. 579, 583, 931 P.2d 1089, 1093 (App. 1996) (Kleinschmidt, J., dissenting) (contending if "evidence raises any issue as to the effect of pretrial identification procedures on the in-court identification of the defendant as the perpetrator of the crime, the defendant is entitled to have a properly instructed jury decide that issue").

¶15        In so concluding, we not only comply with our duty to bring Arizona instruction practice into conformity with *Perry*, but also install an important procedural remedy for the risks attendant to eyewitness testimony. Both the United States Supreme Court and our own highest court have acknowledged these risks. *See Perry*, ___U.S. at ___, 132 S. Ct. at 728 (conceding "the fallibility of eyewitness identifications" and acknowledging studies showing "eyewitness misidentifications are the leading cause of

---

role as fact-finder. *Cf. Rodriguez*, 192 Ariz. 58, ¶ 25, 961 P.2d at 1011 (characterizing general instructions about burden of proof as "poor substitute for a properly supported alibi instruction"). General instructions do not "warn the jury to take care in appraising identification evidence." *Perry*, ___U.S. at ___, 132 S. Ct. at 728-29.

11

wrongful convictions"); *United States v. Wade*, 388 U.S. 218, 228 (1967) (noting pretrial eyewitness identifications arranged by state "peculiarly riddled with innumerable dangers and variable factors," which contribute to "the high incidence of miscarriage of justice from mistaken identification"); *State v. Chapple*, 135 Ariz. 281, 293, 660 P.2d 1208, 1220 (1983) ("[T]he law has long recognized the inherent danger in eyewitness testimony."). In 1983, our state supreme court observed, "Experimental data indicates that many jurors 'may reach intuitive conclusions about the reliability of [such] testimony that psychological research would show are misguided.'" *Chapple*, 135 Ariz. at 293, 660 P.2d at 1220, *quoting* Note, *Did Your Eyes Deceive You? Expert Psychological Testimony on the Unreliability of Eyewitness Identification*, 29 Stan. L. Rev. 969, 1017 (1977) (alteration in *Chapple*). And, as Justice Sotomayor emphasized in *Perry*, in a portion of her dissent embraced by the majority, contemporary research has not contradicted that observation:

> The empirical evidence demonstrates that eyewitness misidentification is "'the single greatest cause of wrongful convictions in this country.'" Researchers have found that a staggering 76% of the first 250 convictions overturned due to DNA evidence since 1989 involved eyewitness misidentification. Study after study demonstrates that eyewitness recollections are highly susceptible to distortion by postevent information or social cues; that jurors routinely overestimate the accuracy of eyewitness identifications; [and] that jurors place the greatest weight on eyewitness confidence in assessing identifications even though confidence is a poor gauge of accuracy . . . .

___U.S. at ___, 132 S. Ct. at 738-39 (Sotomayor, J., dissenting) (citations omitted); *see also* ___U.S. at ___, 132 S. Ct. at 728 (majority acknowledging same concern and citing

12

this portion of dissent).  Given the risks of misidentification, our trial courts will provide important assistance to jurors by instructing them appropriately on factors to consider in evaluating identification evidence.

¶16        Applying the above standards to the facts here, there can be little dispute that Nottingham was entitled to have the jury instructed as he requested.  Indeed, in *Strickland*, our supreme court squarely found an in-court pretrial identification, occurring under very similar circumstances, unduly suggestive.  *Cf.* 113 Ariz. at 446, 447-48, 556 P.2d at 321, 322-23 (victim unable to identify defendant at live lineup or photo lineup, chose different individual at lineup, then identified defendant at preliminary hearing when "[i]t was apparent who[m victim] would have to 'identify,'" partly because defendant seated at defense table).  And, although, as we have concluded today, *Strickland* has been modified by *Perry*, nothing in *Perry* overrules our supreme court's conclusion that those circumstances were suggestive.  To the contrary, the Court in *Perry* starkly observed that, "all in-court identifications" involve an element of suggestion. \_\_\_U.S. at \_\_\_, 132 S. Ct. at 727; *see also Stovall v. Denno*, 388 U.S. 293, 302 (1967) ("The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned."), *overruled on other grounds by Griffith v. Kentucky*, 479 U.S. 314 (1987); *State v. Cañez*, 202 Ariz. 133, ¶ 47, 42 P.3d 564, 581 (2002) ("Single person identifications are inherently suggestive."); *State v. Williams*, 144 Ariz. 433, 441, 698 P.2d 678, 686 (1985) (concluding "one-man show-ups are inherently suggestive"); *State v. Hicks*, 133 Ariz. 64, 67-68, 649 P.2d 267, 270-71 (1982) ("[S]uggestiveness is inherent in a one-man show-up . . . ."); *State v. Ware*, 113

Ariz. 337, 339, 554 P.2d 1264, 1266 (1976) (single photo show-up "unduly suggestive").

Because the in-court identifications of Nottingham by the three witnesses at the first trial were each, in essence, "one-man show-ups," and because the reliability of the in-court identifications at both trials reasonably could be questioned in light of the inability of those same witnesses to identify Nottingham in non-suggestive photo lineups nearer the time of the incidents, we conclude Nottingham presented evidence which would tend to bring the reliability of identification testimony at the second trial into question. Accordingly, the trial court erred in denying his request to have the jury instructed pursuant to RAJI 39.

**¶17** That error, however, is not dispositive; we analyze a court's improper refusal to give a requested instruction for harmless error. *State v. Marshall*, 197 Ariz. 496, ¶ 33, 4 P.3d 1039, 1048 (App. 2000). If the state can show beyond a reasonable doubt that the error did not affect the verdict, the error is harmless. *State v. Anthony*, 218 Ariz. 439, ¶ 39, 189 P.3d 366, 373 (2008). Here, the state had little physical evidence linking Nottingham to the crimes.[6] Thus, the primary issue in the case was whether he could be identified visually as the perpetrator from the surveillance videos and the witnesses' in-court identifications of him. The reliability of the eyewitness identifications of Nottingham therefore was a large part of the state's case and was meaningfully contested. Under such circumstances, we cannot dismiss the possibility

---

[6]Although the state contended the shoes taken from Nottingham when he was arrested appeared to be the same as the shoes worn by the perpetrator, visible in two of the surveillance videos, this was arguably another type of identification evidence.

14

that the jury might have come to a different conclusion had they been instructed properly. *Cf. State v. Abdi*, 226 Ariz. 361, ¶ 17, 248 P.3d 209, 214 (App. 2011) (finding reversible error in improper jury instruction going to "heart of [defendant's] case" when issue at core of instruction "not overwhelmingly proven by the evidence"). The prior mistrial occurring on the same evidence only reinforces this conclusion. The error therefore was not harmless.

## Disposition

**¶18** For the foregoing reasons, we reverse Nottingham's convictions and sentences and remand the case for a new trial.

/s/ *Peter J. Eckerstrom*

PETER J. ECKERSTROM, Presiding Judge

CONCURRING:

/s/ *Joseph W. Howard*

JOSEPH W. HOWARD, Chief Judge

/s/ *J. William Brammer, Jr.*

J. WILLIAM BRAMMER, JR., Judge*

*A retired judge of the Arizona Court of Appeals authorized and assigned to sit as a judge on the Court of Appeals, Division Two, pursuant to Arizona Supreme Court Order filed August 15, 2012.