NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JOSEPH ERIC HILL, *Appellant*.

No. 1 CA-CR 20-0517
FILED 10-19-2021

Appeal from the Superior Court in Maricopa County
No. CR2019-134942-001
The Honorable Ronee Korbin Steiner, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jillian B. Francis
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Carlos D. Carrion
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Brian Y. Furuya joined.

---

**B R O W N**, Judge:

¶1        Joseph Hill appeals from his convictions and sentences for theft, aggravated taking of another person's identity, and forgery.   He argues the court erred when it allowed the State to use his driver's license to elicit first-time, in-court testimony from witnesses about whether the individual depicted in the license was the same person as the suspect. Because the superior court acted within its discretion in admitting the license, we affirm.

**BACKGROUND**

¶2        In February 2018, a customer identifying himself as "Brian," attempted to purchase a large order of wine and champagne from a restaurant.  The restaurant manager contacted his supplier to obtain the merchandise.   Charles Dooly, a sales representative for the supplier, informed the manager the restaurant could not make the sale because it did not have the proper liquor license.  Dooly then spoke with Brian, and suggested he contact a specific wine store to complete his order.

¶3        Brian called A.M., the owner of the wine store, and placed an order totaling $43,339.  Due to the large quantity being ordered, A.M. told Brian he would need to pay in advance.  Brian agreed, and explained he was going to use his assistant's credit card and that the sale had to be put through "in a particular manner."  A.M. followed Brian's instructions, and the sale initially came back as approved.  A.M. then explained that she would need a copy of the credit card and the driver's license of whoever picked up the order to complete the transaction.

¶4        Dooly picked up the merchandise from the supplier and brought it to the wine store.  Brian's assistant, "Steve," called A.M., informing her he would pick up the order on Brian's behalf.  Steve arrived at the wine store later that evening.  Dooly and A.M. described Steve as a white, bald, middle-aged man with no facial hair.  Steve did not have a driver's license or credit card on him when he first arrived, so he left to

2

retrieve the items. He returned later and finished the paperwork with A.M. Meanwhile, Dooly helped load the order into Steve's vehicle. Because of the size of the order, Dooly discreetly took photos of Steve and the car he was driving.

¶5 The following day, A.M.'s merchant services representative informed A.M. that the wine store would be charged back for the purchase. The representative explained that the transaction had been processed as a "forced sale," and although it came back as approved at the time, the sale ultimately did not go through. A.M. called the police and provided her records from the transaction, as well phone numbers for Brian and Steve. The credit card and license Steve had given her did not belong to a person named "Steve," but rather to someone named J.G. Police discovered that one of the phone numbers belonged to Hill. The cell phone provider gave police Hill's address, which matched the address listed on Hill's license.

¶6 Although police never asked A.M. or Dooly to identify Hill as the individual who had purchased the wine, in December 2019 the State indicted Hill for theft, aggravated taking of another person's identity, and forgery. In his notice of disclosure, Hill listed several defenses, including mistaken identification.

¶7 A four-day trial was held in September 2020. Just before opening statements, in discussing the State's exhibits, defense counsel objected to the introduction of Hill's driver's license, asserting it would be unduly suggestive and prejudicial. The State explained that if the witness could not recognize Hill in the courtroom, then the State would show the witness the license. The court was initially reluctant to admit the license for identification purposes. After further discussion, however, the court ruled that the license would be admitted. The State's first witness, A.M., was unable to identify Hill as the suspect either in-person, or through the license photo, although she did testify that the man in the photo looked similar to the suspect. The State's second witness, Dooly, was able to identify Hill in-person. Over defense counsel's objection, Dooly also identified the man pictured on Hill's license as the same suspect.

¶8 At Hill's request, and over the State's objection, the court later instructed the jury as follows:

> Identification. The State must prove beyond a reasonable doubt that the in-court identification of the defendant at this trial is reliable. In determining whether this in-court identification is reliable, you may consider things such as the

witness' opportunity to view at the time of the crime; the witness' degree of attention at the time of the crime; the accuracy of any descriptions the witness made prior to the trial identification; the witness' level of certainty at the time of the trial identification; the time between the crime and the trial identification; any other factor that affects the reliability of the identification.

If you determine that the in-court identification of the defendant at this trial is not reliable, then you must not consider that identification.

¶9　　　　The jury found Hill guilty as charged and the court sentenced Hill to presumptive concurrent prison terms, the longest of which is 15.75 years. Hill timely appealed, and we have jurisdiction under A.R.S. § 12-120.21(A)(1).

## DISCUSSION

¶10　　　　Hill argues the court abused its discretion by allowing the State to attempt to elicit first-time, in-court identifications with his driver's license. We review rulings on in-court identifications for an abuse of discretion, but "review de novo the question whether a common law procedural rule with constitutional underpinnings . . . applies to a particular factual scenario." *State v. Leyvas*, 221 Ariz. 181, 184, ¶ 9 (App. 2009). Because Hill raised the issue at trial, we review for harmless error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005).

¶11　　　　Hill contends the use of his license to elicit in-court identifications violated his due process rights. He argues the use of a single photo was unduly suggestive because it "created a substantial likelihood of misidentification by unfairly focusing attention on the person that the police believed committed the crime," *State v. Strayhand*, 184 Ariz. 571, 588 (App. 1995), and that a more appropriate procedure would have been for the State to conduct a police line-up or photo array before trial.

¶12　　　　It is well established that suggestive *pretrial* identifications arranged by law enforcement officers raise due process concerns. *State v. Lehr*, 201 Ariz. 509, 520, ¶ 46 (2002) ("The Due Process Clause of the Fourteenth Amendment requires us to ensure that any pretrial identification procedures are conducted in a manner that is fundamentally fair and secures the suspect's right to a fair trial."). When pretrial identifications are challenged, Arizona courts apply a two-part test to determine their admissibility: "(1) whether the method or procedure used

was unduly suggestive, and (2) even if unduly suggestive, whether it led to a substantial likelihood of misidentification, i.e., whether it was reliable." *Id.* If the pretrial identification is both unduly suggestive and unreliable, testimony regarding the identification must be excluded. *Id.* The State bears the burden of proof by clear and convincing evidence that the circumstances surrounding the pretrial identification were not unduly suggestive. *See State v. Dessureault*, 104 Ariz. 380, 384 (1969).

¶13 Hill argues that this two-step procedure should also apply to the State's use of his license for the purpose of a first-time, in-court identification. He relies on *State v. Strickland*, where our supreme court applied a *Dessureault* analysis to a first-time witness identification made during a preliminary hearing. 113 Ariz. 445, 448 (1976). In *Strickland*, the court concluded the circumstances surrounding the identification were both highly suggestive and unreliable, and therefore granted the defendant a new trial. *Id.* Thus, *Strickland* stands for the proposition "that suggestive identification procedures occurring as part of formal court proceedings, like those arranged by police, may trigger the procedural protections set forth in *Dessureault*." *State v. Nottingham*, 231 Ariz. 21, 25, ¶ 8 (App. 2012), *abrogated on other grounds by State v. Bigger*, 251 Ariz. 402, 411, ¶ 25 (2021).

¶14 After *Strickland* was decided, however, the U.S. Supreme Court clarified that "the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances *arranged by law enforcement*." *Perry v. New Hampshire*, 565 U.S. 228, 248 (2012) (emphasis added). Thus, "[w]hen no improper law enforcement activity is involved, . . . it suffices to test [an identification's] reliability through the rights and opportunities generally designed for that purpose, notably, . . . vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proven beyond a reasonable doubt." *Id.* at 233; *see also Bigger*, 251 Ariz. at 412, ¶ 29 (recognizing a jury instruction, when appropriate, "as one of the safeguards built into the adversarial system relative to eyewitness testimony of questionable reliability").

¶15 Hill acknowledges *Perry*, but asserts that "[t]he question of whether a first time in-court identification orchestrated by a prosecutor could trigger due process protections was not before the Court." Rather, he argues the import of *Perry* is that due process protections are triggered by any state actor employing suggestive means of identification, including a

prosecutor, and the aim of these procedural safeguards is to "deter the state from rigging the identification procedures."

**¶16** Hill's proffered analysis conflicts with *State v. Goudeau*, 239 Ariz. 421, 457, ¶ 140 (2016). In that case, our supreme court explained that "*Strickland* has been overtaken by *Perry* to the extent [*Strickland*] found . . . in-court identifications could be precluded based on suggestive in-court identification procedures that did not involve improper state conduct."). The *Goudeau* court thus clarified that *Perry* controls when identifications occur "as part of formal court proceedings" and are "not influenced by improper law enforcement activity." *Id.* at 457, ¶ 141; *see also Nottingham*, 231 Ariz. at 25, ¶¶ 8–10. We therefore reject Hill's argument that the procedural requirements in *Lehr* and *Dessureault* apply to first-time witness identifications made as part of formal court proceedings. Thus, because the superior court's admission of Hill's license did not implicate due process concerns, the court was not required to conduct a *Dessureault*-type hearing or analysis.

**¶17** Because admission of Hill's license does not raise due process concerns, we review the court's decision solely for an abuse of discretion. Hill argues the State's use of the license was unduly suggestive, given that it was the only photo of a bald white man presented to the witnesses. But the use of a single photo is no more suggestive than the traditional in-court identification where a witness identifies the defendant in person. *See Perry*, 565 U.S. at 244 ("Most eyewitness identifications involve some element of suggestion. Indeed, all in-court identifications do."); *see also Goudeau*, 239 Ariz. at 456–57, ¶¶ 136–43 (finding no abuse of discretion in allowing witnesses to identify the defendant for the first time during formal court proceedings when he was the only African American male in the courtroom and seated next to the defense attorney).

**¶18** Hill also contends the State's reliance on his license photo was unnecessary because he was present at trial and therefore available for in-person identification. But the State is generally allowed to introduce corroborating evidence, especially considering Hill's defense was mistaken identity. *See State v. Talmadge*, 196 Ariz. 436, 440, ¶ 19 (2000). The suspect was bald and clean shaven at the time of the crime. At trial, Hill had facial hair and longer hair. Thus, his license photo, taken when the Hill was clean shaven, may have assisted the witnesses in identifying Hill as the suspect.

**¶19** Finally, Hill questions the reliability of the identifications, but those concerns were sufficiently tested through cross-examination, when A.M. and Dooly were questioned at length on whether they could properly

recall and describe who entered the store to purchase the wine. *See Goudeau*, 239 Ariz. at 455, ¶ 131. And Hill was afforded additional safeguards to test the reliability of the in-court identifications. For example, the superior court ensured that pertinent evidentiary rules were followed, and it instructed the jury on factors it could consider in evaluating the State's identification evidence. *See Bigger*, 251 Ariz. at 412, ¶ 29. Accordingly, the court did not abuse its discretion in admitting Hill's license.

## CONCLUSION

¶20         We affirm Hill's convictions and sentences.

